UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X

QIAN WANG, a/k/a SARAH WANG,
ZHANWEN CHI, on their own behalf
and on behalf of others similarly situated,
TIANDE WANG, YA XU, LU YANG,

                          Plaintiffs,

                 -against-

KIRIN TRANSPORTATION INC., d/b/a
KIRIN TRANSPORTATION, QIANG
CHEN, a/k/a FRANK CHEN,
MARRIANA YUHUA SONG, a/k/a
NANCY SONG, and QIUXIANG SHI,
a/k/a QIU XIANG SHI,

                         Defendants.

---------------------------------------------------------X

**MEMORANDUM & ORDER**
20-CV-5410 (KAM) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

      On November 6, 2020, Plaintiffs Qian Wang, also known as Sarah Wang, and Zhanwen Chi ("Plaintiffs") initiated this action on behalf of themselves and others similarly situated against Defendants Kirin Transportation Inc. ("Kirin"), Qian Cheng, also known as Frank Chen, Marriana Yuhua Song, also known as Nancy Song, and Qiuxiang Shi, also known as Qiu Xiang Shi (collectively "Defendants"). (*See* Complaint ("Compl."), ECF No. 1.) Plaintiffs seek damages for unpaid wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law, Art. 6 § 190 *et seq.* and Art. 19 § 650 *et seq.* ("NYLL").

      Currently pending before this Court is Plaintiffs' motion for conditional certification as a collective action under the FLSA (*see* Pls.' Mot., ECF No. 38; Pls.' Decl. in Supp. of Mot. ("Pls.' Decl."), ECF No. 39; Pls.' Mem. in Supp. of Mot. ("Pls.' Mem."), ECF No. 40; Pls.' Reply in Supp. of Mot. ("Pls.' Reply"), ECF No. 45), which Defendants

oppose (*see* Defs.' Decl. in Opp'n to Pls.' Mot. ("Defs.' Decl."), ECF No. 43; Defs.' Mem.

in Opp'n to Pls.' Mot. ("Defs.' Mem."), ECF No. 44).

For the reasons that follow, Plaintiffs' motion is granted, in part.[1]

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As noted above, Plaintiffs Qian Wang and Zhanwen Chi initiated this collective

action on November 6, 2020. (*See* Compl., ECF No. 1.) Opt-in Plaintiff Tiande Wang

consented to join the litigation on December 2, 2020. (T. Wang Consent to Become Party

Plaintiff, ECF No. 9.)[2] Plaintiffs also filed an amended complaint on December 2, 2020,

which is the operative complaint in this action. (Amended Complaint ("Am. Compl."),

ECF No. 10.)

According to the amended complaint, Kirin is a Queens-based private

transportation service for seniors that employs "around 30 drivers, and between 3 to 6

office employees." (*Id.* ¶¶ 9, 65–66, 151; *see also* Defs.' Decl., ECF No. 43, ¶ 5.) Plaintiff

Qian Wang alleges that from June 1, 2016, until November 3, 2020, she worked for

Defendants as a billing, payroll, and sanitation worker[3] at 142-04 Bayside Ave, Suite 7L,

Flushing, NY 11354. (Am. Compl., ECF No. 10, ¶¶ 7, 45.) She claims that she was paid

---

[1] It is well settled that a magistrate judge has authority to decide a motion for certification of a collective action. *See, e.g., Thompson v. Glob. Contact Servs., LLC*, No. 20-CV-651 (MKB) (SJB), 2021 WL 3087568, at *1 n.4 (E.D.N.Y. July 21, 2021); *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 383–84 (E.D.N.Y. 2010).

[2] Plaintiffs Ya Xu and Lu Yang subsequently filed their consent to join as Plaintiffs on February 22, 2021. (*See* Xu Consent to Become Party Plaintiff, ECF No. 32; Yang Consent to Become Party Plaintiff, ECF No. 33.) Accordingly, "Plaintiffs" herein also refers to the three opt-in Plaintiffs who have joined the two named Plaintiffs in the action.

[3] The Court notes that neither the amended complaint nor the affidavits submitted in support of Plaintiffs' motion provide further detail regarding Plaintiff Qian Wang's role — or any of Kirin's employees' roles — as a sanitation worker. Furthermore, Defendants maintain that Plaintiff Qian Wang "did not perform janitorial or cleaning services work for Kirin." (Defs.' Decl., ECF No. 43, ¶ 23.)

$12 an hour until March 2019, and then $13.50[4] an hour for the remainder of her employment, and that she was not paid for "all hours worked," including the two to three overtime hours she worked on average per week between November 1, 2016, and March 1, 2019. (*Id.* ¶¶ 46–47, 49–52.) Plaintiff Qian Wang also alleges that she did not have a fixed time for lunch or dinner, "was never informed of her hourly pay rate or any tip deductions toward the minimum wage[, and] was not given a statement with her weekly payment," as required by law. (*Id.* ¶¶ 48, 53–54.) Additionally, she claims she was fired on December 2, 2020, shortly after filing the instant lawsuit, and therefore also alleges a claim for retaliation under the FLSA and NYLL. (*Id.* ¶¶ 56–61, 157–65.)[5]

Plaintiff Zhanwen Chi alleges that he worked as a commuter van driver for Defendants from November 1, 2016, until March 31, 2019. (*Id.* ¶¶ 8, 64.) Plaintiff Chi asserts that he worked an average of 41 hours per week providing transportation for senior passengers between their homes and two senior centers with which Kirin Transportation maintains contracts. (*Id.* ¶¶ 64–66, 69.) He claims he was paid, on average, $130 per day, and that his rate of pay was determined "by the number of persons he drove to the senior center and the distance from his home to the senior

---

[4] The amended complaint states that Plaintiff Qian Wang "was paid an hourly rate of fourteen dollars ($13.50) per hour." (Am. Compl., ECF No. 10, ¶ 50.) As will be explained, the Court resolves ambiguities in favor of Plaintiffs for the purposes of the instant motion, and therefore, the Court credits the lower amount.

[5] The five Plaintiffs in this case, as well as the four Defendants, are all also parties in a related case arising out of Plaintiffs' retaliation claims, which was filed in this district on June 8, 2021. *See* Complaint & Amended Complaint, *Wang et al. v. Kirin Transportation Inc. et al.*, 21-CV-3254 (KAM) (TAM) (E.D.N.Y. June 8, 2021), ECF Nos. 1, 11. In that case, a telephonic initial conference is scheduled before the undersigned magistrate on January 19, 2022. (*See* Jan. 6, 2022 ECF Order, 21-CV-3254.) Additionally, the Court notes that the five Plaintiffs in this case have recently filed a third lawsuit in this district against corporate entities based in China, stemming from the same alleged wage and hour violations. *See* Complaint, *Wang et al. v. Hebei Tiankai Foundation Engineering Technical Co., Ltd et al.*, 21-CV-7194 (KAM) (TAM) (E.D.N.Y. Dec. 30, 2021), ECF No. 1.

center." (*Id.* ¶ 72, 74.) However, Plaintiff Chi alleges that he was not paid overtime or reimbursed for various driving-related expenses, and that Defendants owe him "at least $9960 in unpaid wages." (*Id.* ¶ 76; *see also id.* ¶¶ 75, 77–85, 89–91.) Lastly, like Plaintiff Qian Wang, Plaintiff Chi states that he did not have a fixed time for lunch or dinner and was not provided proper wage notice statements. (*Id.* ¶¶ 71, 86–88.)

Accordingly, Plaintiffs' amended complaint alleges, *inter alia*, that Defendants willfully violated the minimum wage and overtime requirements of the FLSA and NYLL, as well as the wage and notice and spread of hours requirements under the NYLL. (*Id.* ¶¶ 2–4, 38–44, 102–49.)[6]

On September 3, 2021, Plaintiffs moved for an order conditionally certifying this case as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b), on behalf of all current and former non-exempt and non-managerial employees employed by Defendants from November 6, 2017 to the present. (Pls.' Mot., ECF No. 38; Pls.' Decl., ECF No. 39; Pls.' Mem., ECF No. 40.) The motion was fully briefed as of October 8, 2021 (*see* Defs.' Decl., ECF No. 43; Defs.' Mem., ECF No. 44; Pls.' Reply, ECF No. 45), and the

---

[6] In December 2020, shortly after filing the amended complaint, Plaintiffs moved for injunctive relief, accusing Defendants of taking retaliatory action against named Plaintiff Qian Wang and her father, opt-in Plaintiff Tiande Wang. (*See* Proposed Order to Show Cause, ECF No. 16; Pls.' Mem. in Supp. of Order to Show Cause, ECF No. 16-1; Aff. of Qian Wang, ECF No. 16-3; Aff. of Tiande Wang, ECF No. 16-4; *see also* Proposed Order to Show Cause, ECF No. 12.) On December 18, 2020, the Honorable Kiyo A. Matsumoto held a hearing and denied Plaintiffs' request for injunctive relief without prejudice, finding that Plaintiffs "failed to satisfy the high standard required for irreparable harm." (Dec. 18, 2020 ECF Minute Entry.) On February 24, 2021, Plaintiffs renewed their request for injunctive relief because Defendants were purportedly attempting to pressure potential opt-in plaintiffs into settling their wage and hour claims. (*See generally* Proposed Order to Show Cause, ECF No. 34; Decl. of John Troy, ECF No. 34-2.) Following the filing of Defendants' opposition briefing (*see* Decl. of James Costo, ECF No. 35; Defs.' Mem. in Opp'n, ECF No. 36), Judge Matsumoto held another hearing and denied Plaintiffs' renewed request without prejudice (s*ee* Feb. 28, 2021 ECF Order). Specifically, Judge Matsumoto concluded that "none of the additional declarations provided by [P]laintiffs indicate that any potential plaintiffs have been intimidated or otherwise prevented from participating in the instant litigation." (*Id.*)

Honorable Kiyo A. Matsumoto referred Plaintiffs' motion to the undersigned magistrate judge on October 12, 2021 (Oct. 12, 2021 ECF Order).

For the reasons that follow, the Court finds that Plaintiffs have made the requisite showing that the van driver Plaintiffs and Defendants' other commuter van drivers were similarly situated in terms of Defendants' alleged FLSA overtime violations. Accordingly, conditional certification is warranted as to this limited sub-group, subject to the restrictions below.

## DISCUSSION

### I.   Legal Standard

Section 216(b) of the FLSA provides employees with a right of action on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). To determine whether a worker should be permitted to bring a "collective action" under the FLSA, courts in the Second Circuit apply a two-step analysis for certification. *See Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010); *Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 316 (E.D.N.Y. 2016). "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555. If the Court finds at the first step that "the putative class is sufficiently similarly situated, the action will be conditionally certified and each class member may then consent in writing to 'opt-in' to the litigation." *Agonath v. Interstate Home Loans Ctr., Inc.*, No. 17-CV-5267 (JS) (SIL), 2019 WL 1060627, at *2 (E.D.N.Y. Mar. 6, 2019) (citing 29 U.S.C. § 216(b)). The second step, sometimes called the "decertification stage," involves determining "whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs," and is made with the benefit of a fuller

record. *Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 118 (E.D.N.Y. 2020); *see also Myers*, 624 F.3d at 555.

"The instant motion concerns only the first step: whether the proposed opt-in members are 'similarly situated' such that conditional certification should be granted." *Zaldivar*, 166 F. Supp. 3d at 317. Satisfying the first prong for conditional certification requires that the plaintiff "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); *see also id.* ("[T]he purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." (emphasis in original)); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The focus of this inquiry . . . is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated.").

At this first stage, district courts examine pleadings and affidavits, but "do[] not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations." *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 385 (E.D.N.Y. 2010). In addition, while the "modest factual showing" is deemed "a low standard of proof," it cannot be satisfied by "unsupported assertions." *Myers*, 624 F.3d at 555; *see also Thompson v. Glob. Contact Servs., LLC*, No. 20-CV-651 (MKB) (SJB), 2021 WL 3087568, at *3 (E.D.N.Y. July 21, 2021); *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 479 (S.D.N.Y. 2016). For example, a plaintiff seeking certification must offer "concrete facts evidencing a common scheme or plan of wage and hour violations for employees engaged in different job functions." *Mata v. Foodbridge LLC*, No. 14-CV-8754 (ER), 2015 WL 3457293, at *3 (S.D.N.Y. June 1, 2015).

Furthermore, "[w]here, as here, a conditional certification motion is made after some, but not all, discovery has occurred, it remains an open question whether some kind of 'intermediate scrutiny' should apply." *Korenblum*, 195 F. Supp. 3d at 480–81; *see also Jibowu*, 492 F. Supp. 3d at 119; *Gaston v. Valley Nat'l Bancorp*, No. 17-CV-1886 (FB) (SMG), 2018 WL 4158407, at *2 (E.D.N.Y. Aug. 30, 2018) (describing the "'modest-plus' standard as a 'sliding scale,' with progressively more scrutiny applied as more evidence enters the record"). *But see Chowdhury v. Duane Reade, Inc.*, No. 06-CV-2295 (GEL), 2007 WL 2873929, at *3 (S.D.N.Y. Oct. 2, 2007) (finding that "it would be inappropriate to make more than a 'preliminary determination' at this time, or to require plaintiff to meet a more stringent standard than that typically applied at the early stages of litigation"). As the court in *Jibowu* observed, "[t]his heightened standard is rooted in efficiency concerns, and a reviewing court should deny conditional certification if it determines that the solicitation of additional opt-ins through court-authorized notice would not promote efficient resolution of common issues." *Jibowu*, 492 F. Supp. 3d at 119 (quotation marks omitted). In light of the efficiency concerns described in *Jibowu*, the Court adopts a "'sliding scale' approach to the 'modest-plus' standard" in determining whether the potential opt-in plaintiffs are "similarly situated" to Plaintiff. *Id.* at 120; *see also id.* at 120 n.34.[7]

## II.   Analysis

Plaintiffs have moved for an order conditionally certifying this case as a collective action on behalf of all non-exempt, non-managerial employees who worked

---

[7] Although "written discovery regarding the named Plaintiffs is closed," the parties recently moved to extend discovery pending the outcome of the instant motion. (*See* Joint Discovery Mot., ECF No. 46.) Accordingly, the case has not reached the stage where Plaintiffs should be held to a significantly more stringent standard. *Cf. Shanfa Li v. Chinatown Take-Out Inc.*, No. 16-CV-7787 (JCM), 2018 WL 1027161, at *3 (S.D.N.Y. Feb. 21, 2018).

for Defendants from November 6, 2017 to present, and for authorization to distribute notice of the action to potential opt-in plaintiffs. (*See* Am. Compl., ECF No. 10, ¶ 92; Pls.' Mot., ECF No. 38; Proposed Notice of Pendency and Consent Form ("Proposed Notice"), ECF No. 39-2.) Plaintiffs contend that they "can make a substantial showing that they and all similarly-situated nonexempt employees employed by Defendants were subject to a common policy or plan that violated the FLSA and NYLL." (Pls.' Mem., ECF No. 40, at 13.) Specifically, Plaintiffs argue "they were not paid for all the work[] they completed at [the] promised rate, were not paid required minimum wage for each hour worked, were not compensated for overtime hours, and were not reimbursed for all the 'out-of-pocket' cost[s] associated with the vehicle[s] they [drove] for Defendants[.]" (*Id.* at 13–14.) Defendants oppose Plaintiffs' motion for conditional certification and raise several objections to the proposed notice form submitted by Plaintiffs. (*See* Defs.' Decl., ECF No. 43; Defs.' Mem., ECF No. 44.)

For the reasons that follow, the Court finds that Plaintiffs have made a "modest factual showing" that Plaintiffs Chi, Tiande Wang, Yang, Xu, and the other commuter van drivers were similarly situated in terms of Defendants' alleged FLSA overtime violations. Accordingly, conditional certification is warranted as to this limited sub-group, subject to the restrictions outlined below.

## A. Plaintiffs' Supporting Affidavits

In support of their motion for conditional certification, Plaintiffs have each submitted sworn affidavits describing Kirin's allegedly unlawful employment practices. (*See generally* Affidavit of Qian Wang a/k/a Sarah Wang ("Q. Wang Aff."), ECF No. 39-4; Affidavit of Tiande Wang ("T. Wang Aff."), ECF No. 39-5; Affidavit of Lu Yang ("Yang Aff."), ECF No. 39-6; Affidavit of Ya Xu ("Xu Aff."), ECF No. 39-7; Affidavit of Zhanwen Chi ("Chi Aff."), ECF No. 39-8.) Plaintiff Qian Wang's affidavit reiterates the

allegations contained in the amended complaint, but clarifies that she was "supposed to be paid" $15 an hour between January 2020 and November 2020 (as opposed to "was paid" $13.50), and that she was not paid for the two to three overtime hours she worked on average per week between approximately April 2, 2018, and December 2, 2020 (as opposed to November 1, 2016 until March 1, 2019). (*Compare* Q. Wang Aff., ECF No. 39-4, ¶¶ 4–12; *with* Am. Compl., ECF No. 10, ¶¶ 46–52.) Similarly, Plaintiff Chi's affidavit echoes the amended complaint but asserts that he worked an average of 51 hours per week instead of 41 hours per week. (*Compare* Chi Aff., ECF No. 39-8, ¶¶ 6–22; *with* Am. Compl., ECF No. 10, ¶¶ 64–89.)[8]

Like Plaintiff Chi, opt-in Plaintiffs Tiande Wang, Lu Yang, and Ya Xu state that they worked for Defendants as commuter van drivers. (*See* T. Wang Aff., ECF No. 39-5, ¶ 3; Yang Aff., ECF No. 39-6, ¶ 3; Xu Aff., ECF No. 39-7, ¶ 3.) Specifically, Mr. Wang attests that he worked as a driver for Defendants from July 2016 until March 2017, and again from April 2019 until December 2, 2021, and that he worked five or six days a week for an average of 48.36 hours per week. (T. Wang Aff., ECF No. 39-5, ¶¶ 3, 9–10.)[9]

---

[8] At this stage of the litigation, the Court does not resolve factual discrepancies and draws all inferences in favor of Plaintiffs. *See Summa*, 715 F. Supp. 2d at 385; *see also Contrera v. Langer*, 278 F. Supp. 3d 702, 715 (S.D.N.Y. 2017) ("When there are ambiguities in the papers seeking collective action status, the court must draw all inferences in favor of the plaintiff at the preliminary certification stage."). For example, the Court notes that Plaintiff Chi alleges he worked ten hours per day, five days per week for 90% of the time (totaling 50 hours per week); and ten hours per day, six days per week for 10% of the time (totaling 60 hours per week), claiming an "average of fifty-one (51) hours each week," but does not specify the dates of his alleged overtime work with clarity. (Chi Aff., ECF No. 39-8, ¶ 8.)

[9] Mr. Wang's approximations of his hours worked are difficult to decipher. (*See* T. Wang Aff., ECF No. 39-5, ¶ 10 (stating that his work schedule ran from "07:00-16:00 for nine (9) hours per day for 80% and for five (5) days a week for 80% and six (6) days a week for 20% of the time;[] 07:00 to 17:00 for ten (10) hours per day for 10% and [] for five (5) days a week for 80% and six (6) days a week for 20% of the time;[] 07:00 to 18:00 for eleven (11) hours per day for 10% and for five (5) days a week for 80% and six (6) days a week for 20% of the time").) For the purposes of the instant motion, the Court credits Mr. Wang's estimated weekly average of 48.36 hours (*id.* ¶ 11). *See Contrera*, 278 F. Supp. 3d at 714–15; *Summa*, 715 F. Supp. at 385.

Mr. Wang claims he was paid, on average, $120 per day, or around $3,600 per month, and that his pay depended upon "how many customers or orders [he] was assigned to drive on each workday, and the rate for each assignment or order was fixed, determined by and subject to adjustment by Defendants." (*Id.* ¶ 13.) However, Plaintiff Wang alleges that he was not paid overtime or reimbursed for various driving-related expenses, that Defendants owe him "at least . . . $11,000 in unpaid wages," and that he was not provided proper wage notice statements. (*Id.* ¶¶ 14–21.)

Opt-in Plaintiff Lu Yang avers that from approximately 2015 until March 1, 2021, he worked six days a week for an average of 51 hours per week for Defendants, and that he was not paid for all the work he completed or for overtime hours worked. (Yang Aff., ECF No. 39-6, ¶¶ 3, 9–10, 14, 20, 23.)[10] Plaintiff Yang claims that throughout his employment, Defendants agreed to pay him at varying rates and frequencies, in addition to a profit-sharing arrangement he had with Plaintiff Ya Xu, but that Defendants did not always pay him as promised. (*Id.* ¶¶ 11–13 ("At the very beginning of my employment, I was supposed to be paid once every one and half (1.5) month[s] between $3,000 and $12,000 each time, depending upon how many customers I was assigned to drive . . . . After the new boss took over the business, I was supposed to be paid once every two weeks between $4,000 and $5,000 each time . . . ."); *id.* ¶¶ 15–17 ("Defendants [were] supposed to pay me 75% of the gross profits earned from contracted senior centers for services I rendered; whenever I received that 75% pay, I was required to split half or 50% of my pay [] share with Plaintiff Ya Xu. . . . Defendants

---

[10] Like Plaintiff Chi, the specific periods of Plaintiff Yang's alleged overtime work are unclear. (*See* Yang Aff., ECF No. 39-6, ¶¶ 9–10 (stating that Plaintiff Yang worked eleven hours per day, six days per week for 50% of the time (totaling 66 hours per week); and six hours per day, six days per week for 50% of the time (totaling 36 hours per week), claiming an "average of fifty-one (51) hours each week").)

owed me $137.76, and never paid me back until I was fired [i]n 2021.").) Plaintiff Yang also states that Defendants did not reimburse him for driving-related expenses, but does not indicate how much he is owed at present. (*See id*. ¶¶ 18–19.)

Relatedly, opt-in Plaintiff Ya Xu attests that Defendants employed her as a driver and a marketer from 2016 until March 1, 2021. (Xu Aff., ECF No. 39-7, ¶¶ 3, 6.)[11] Plaintiff Xu claims that between 2017 and March 1, 2021, she worked six days per week for a total of 48 hours, and that Defendants agreed to pay her according to the profit-sharing agreement in which she and Plaintiff Yang would split 75% of "the gross profits earned from contracted senior centers of the services [they] rendered." (*Id.* ¶¶ 9–12; *see also id.* ¶ 13 (describing a 10% bonus incentive that Defendants cancelled).) Like Plaintiff Yang, Plaintiff Xu states that she was not paid for all of her completed work or for overtime hours, and that she was not reimbursed for driving-related expenses. (*Id.* ¶¶ 13–17, 20.) Plaintiff Xu does not specify how much she is owed at present. Further, Plaintiffs Yang and Xu both claim that they were not provided proper wage and hour notices during their employment. (*See* Yang Aff., ECF No. 39-6, ¶¶ 21–22; Xu Aff., ECF No. 39-7, ¶¶ 18–19.)

Each of the five Plaintiffs state that during their employment with Defendants, they "got to know" or "became familiar" with one to two payroll and billing workers, three to four dispatchers, and around fifteen drivers who "also suffered [the] same practice of Defendants and [] were not paid for all works completed, overtime pay[,] and minimum wages for all [] hours worked in excess of forty (40) hours a week." (Q. Wang Aff., ECF No. 39-4, ¶ 16; T. Wang Aff., ECF No. 39-5, ¶ 25; Yang Aff., ECF No.

---

[11] The Court notes that Defendants deny ever employing Ya Xu. (*See* Defs.' Decl., ECF No. 43, ¶¶ 38–43; Defs.' Mem., ECF No. 44, at 2.) However, resolving this dispute goes beyond the scope of the instant motion. *See Contrera*, 278 F. Supp. 3d at 714–15; *Summa*, 715 F. Supp. at 385.

39-6, ¶ 27; Xu Aff., ECF No. 39-7, ¶ 24; Chi Aff., ECF No. 39-8, ¶ 29.)[12] For the four

dispatchers, Plaintiffs only assert a potential hourly wage violation as to one, Hai Sheng

Lu a/k/a/ Henry Lu, whom Defendants allegedly paid $13.50 per hour in 2019, which

Plaintiff Qian Wang knows "because he told [her] while [they] where working together

and [she] saw his tax return." (Q. Wang Aff., ECF No. 39-4, ¶¶ 17–21; *see also* Pls.' Mem.,

ECF No. 40, at 14.)[13] For the other three dispatchers, as well as the two billing and

payroll employees, Plaintiffs do not make any representations as to their payment and

only assert that one dispatcher, Steven Tang, worked more than 40 hours per week, and

that he did so for an undefined period of time "at [the] very beginning." (Q. Wang Aff.,

ECF No. 39-4, ¶ 29; *see also id.* ¶¶ 22–28, 30–42.)

Plaintiffs further state that they worked together with fifteen other commuter

van drivers, each of whom worked three to seven days per week for a total of between

approximately 23 and 57.5 hours per week. (*See id.* ¶¶ 45–46, 51–52, 57–58, 63–64, 69–70,

75–76, 80–81, 86–87, 92–93, 98–99, 104–05, 110–11, 116–17, 122–23, 128–29; *see also* Pls.'

Mem., ECF No. 40, at 14.) Plaintiff Qian Wang describes these drivers' monthly salaries

---

[12] In the amended complaint, Plaintiffs allege that in total, "[t]here are around 35 employees working for Defendants, including around 30 drivers, and between 3 to 6 office employees." (Am. Compl., ECF No. 10, ¶ 36.) Defendants, on the other hand, assert that they employ a "few . . . office workers to assist with billing, payroll and dispatch services," but that they "do[] not perform 'commuter van services,'" and instead, "pay[] independent contractors to perform driving services." (Defs.' Decl., ECF No. 43, ¶¶ 7–10; *see also* Defs.' Mem., ECF No. 44, at 4; Pls.' Mem., ECF No. 40, at 5–6.) Whether the individuals Kirin pays to drive are employees or independent contractors is a legal inquiry going to the merits of the case that the Court need not address as part of the instant motion. *See Jeong Woo Kim v. 511 E. 5th St., LLC,* 985 F. Supp. 2d 439, 447 (S.D.N.Y. 2013); *see also Velu v. Velocity Exp.,* Inc., 666 F. Supp. 2d 300, 305–06 (E.D.N.Y. 2009) (addressing this question at summary judgment).

[13] Indeed, Plaintiff Qian Wang is the only Plaintiff who makes any representations whatsoever as to the respective pay rates of any payroll/billing worker or dispatcher. (*See* T. Wang Aff., ECF No. 39-5, ¶¶ 26–45; Yang Aff., ECF No. 39-6, ¶¶ 28–43; Xu Aff., ECF No. 39-7, ¶¶ 25–40; Chi Aff., ECF No. 39-8, ¶¶ 30–40.) Similarly, she is the only one who makes specific claims as to the salary levels of the fifteen other commuter van drivers Plaintiffs name as part of their putative collective. (*See* T. Wang Aff., ECF No. 39-5, ¶¶ 46–105; Yang Aff., ECF No. 39-6, ¶¶ 44–103; Xu Aff., ECF No. 39-7, ¶¶ 41–100; Chi Aff., ECF No. 39-8, ¶¶ 41–64.)

as ranging from $1,000 to $5,000. (*See* Q. Wang Aff., ECF No. 39-4, ¶¶ 47–48, 53–54, 59–60, 65–66, 71–72, 76–77, 82–83, 88–89, 94–95, 100–01, 106–07, 112–13, 118–19, 124–25, 130.) In addition, Plaintiffs include charts summarizing the alleged hours and pay rates of the employees named in the respective affidavits. (*See* Affidavit Summaries, ECF No. 39-9.)

### B.  Conditional Certification

The Court now turns to whether Plaintiffs have made the "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Hoffmann*, 982 F. Supp. at 261); *see also Thompson*, 2021 WL 3087568, at *3 ("Key to this showing is whether plaintiffs 'provide actual evidence of a factual nexus between their situation and those that they claim are similarly situated rather than mere conclusory allegations.'" (quoting *Qing Gu v. T.C. Chikurin, Inc.*, No. 13-CV-2322 (SJ) (MDG), 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014))). Plaintiffs argue that their experiences "were not unique; rather the way they were compensated was and remains standard operating procedure with regard to other drivers, marketers, sanitation workers, and payroll managers." (Pls.' Mem., ECF No. 40, at 14.) Defendants maintain that Plaintiffs have "failed to satisfy their 'factual nexus' between themselves and the proposed class of potential opt-in plaintiffs" and "have not made a factual showing that Plaintiffs are all similarly situated and subject to a common policy or plan that violated the FLSA." (Defs.' Mem., ECF No. 44, at 4, 5.)

Having reviewed the amended complaint, the record, and Plaintiffs' motion, which includes affidavits and summary charts, the Court finds Plaintiffs have made a "modest factual showing" sufficient to grant conditional certification of a collective as to Plaintiffs Zhanwen Chi, Tiande Wang, Lu Yang, Ya Xu, and Defendants' van drivers,

but not all current and former non-exempt employees.[14] *See, e.g., Ni v. Red Tiger Dumpling House Inc*, No. 19-CV-3269 (GRB) (AKT), 2020 WL 7078533, at *6 (E.D.N.Y. Nov. 30, 2020) ("[T]he Court determines that Plaintiffs have failed to meet their burden with respect to '*all* non-exempt employees' of Defendants." (emphasis added)); *see also Qing Gu*, 2014 WL 1515877, at *4 ("Absent further explanation or information from plaintiffs, this Court cannot find that all of these employees are similarly situated to plaintiff[].").

### 1. Unlawful Policy

To bring a collective action, Plaintiffs must first show that they, themselves, were victims of Defendants' illegal pay practices. *See Cruz v. Ham N Eggery Inc.*, No. 15-CV-CV-3228 (JBW) (MDG), 2016 WL 4186967, at *4 (E.D.N.Y. Aug. 8, 2016)*; Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 447 (S.D.N.Y. 2013). In this case, Plaintiffs have moved for a collective based on claims of Defendants' failure to pay a minimum wage and overtime pursuant to the FLSA. (*See* Am. Compl., ECF No. 10, ¶¶ 92, 102–09, 116–19, 125–32; *see also* Pls.' Mem., ECF No. 40, at 1, 2, 6, 16.) Specifically, Plaintiffs contend that the commuter van drivers worked "between forty and [a] half to fifty-seven (40.5–57) [hours], but they were paid a flat monthly rate ranging from [one] thousand to five thousand dollars ($1,000-$5,000) and most of them were paid two thousand to three thou[]sand dollars ($2,000-$3,000), no matter how many hours they drove." (Pls.' Mem., ECF No. 40, at 14; *see also id.* at 2.) They also assert that "all employee[s] working at [the] dispatching cent[er], including dispatchers . . . and billing and payroll workers, were []

---

[14] The Court conditionally certifies this limited collective only as to the claim for failure to pay overtime pursuant to the FLSA, as alleged in Plaintiffs' amended complaint. (*See* Am. Compl., ECF No. 10, ¶¶ 92, 102–09, 125–32.) *Cf. Chui v. Am. Yuexianggui of LI LLC*, No. 18-CV-5091 (SJF) (AKT), 2020 WL 3618892, at *6 n.6 (E.D.N.Y. July 2, 2020). As will be explained below, because Plaintiffs have not shown that they were victims of an FLSA minimum wage (as opposed to NYLL) violation, the Court finds no basis for conditional certification on that claim.

required to work . . . between forty to forty-eight (40–48) hours per week," but that "no matter how many hours [] they actually work[ed], . . . they received a flat hourly rate below minimum wage without overtime pay." (*Id*. at 14.)

a) *FLSA Minimum Wage Claims*

As an initial matter, the Court finds that Plaintiffs have not shown that they were subject to a minimum wage violation under the FLSA. At all times relevant for this action, the FLSA entitled Plaintiffs to a federal minimum hourly wage of $7.25. *See* 29 U.S.C. § 206(a)(1); *see also Han v. Shang Noodle House, Inc.*, No. 20-CV-2266 (PKC) (VMS), 2021 WL 3774186, at *8 (E.D.N.Y. Aug. 24, 2021); *Placinta v. Grazina Pilka, Inc.*, No. 16-CV-4272 (KAM) (SJB), 2018 WL 5024170, at *7 (E.D.N.Y. Oct. 5, 2018) ("At this stage it is only necessary to consider whether the alleged policies violate federal law."). Plaintiff Qian Wang attests that she "was supposed to paid" at least $12 an hour during the course of her employment but "was not paid for all hours worked." (*See* Q. Wang Aff., ECF No. 39-4, ¶¶ 8–10.) The only other hourly rate described in Plaintiffs' submissions is for dispatcher Hai Sheng Lu a/k/a Henry Lu, and affirms that he was paid above the federal minimum wage. (*See id.* ¶ 21 ("In 2019, he was paid $13.50 per hour, and in 2020, he was paid $15 per hour.").) Without additional "concrete facts evidencing a common scheme or plan of wage and hour violations" with respect to the federal minimum wage, the Court cannot conclude that Plaintiff Qian Wang has established that she or any of the other office workers were paid less than $7.25 per hour. *Mata*, 2015 WL 3457293, at *3.

For the commuter van drivers, the regular rate for "a flat sum for a day's work . . . is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked." 29 C.F.R. § 778.112. Similarly, "a monthly salary is translated to its equivalent weekly wage by multiplying

[the alleged wage] by 12 (the number of months) and dividing by 52 (the number of weeks)," and then, "dividing the [weekly] salary by the number of hours which the salary is intended to compensate." *See Han*, 2021 WL 3774186, at *8 (quotation marks omitted) (citing 29 C.F.R. § 778.113; *Santillan v. Henao*, 822 F. Supp. 2d 284, 293 (E.D.N.Y. 2011)). In this case, calculating the wages and hours that the van driver Plaintiffs attest to using the above-mentioned formulas all come out to hourly rates above $7.25.[15]

For example, Plaintiff Chi alleges he was paid $130 per day, on average, and sometimes as low as $100 per day, for 51 hours worked over five or six days per week. (Chi Aff., ECF No. 39-8, ¶¶ 8, 12–13.) Calculating these claims in a method most favorable to Plaintiffs, i.e., 51 hours over the fewest days (5) for the least amount of money per day ($100), comes out to $9.80 (5 x 100 / 51). Similarly, based on an average of 48.36 hours worked per week over five days for $120 per day, or $3,600 per month

---

[15] The Court notes that one of the fifteen other commuter van drivers Plaintiffs name as part of their putative collective, Ping He, is alleged to have been paid below the federal minimum wage. Plaintiffs claim Mr. He worked either 40.5 or 45 hours per week (*see* Q. Wang Aff., ECF No. 39-4, ¶ 63; T. Wang Aff., ECF No. 39-5, ¶ 60; Yang Aff., ECF No. 39-6, ¶ 58; Xu Aff., ECF No. 39-7, ¶ 55), and that he was paid $1,000 to $1,200 per month, which Plaintiff Qian Wang knows because she "made his payroll." (Q. Wang Aff., ECF No. 39-4, ¶¶ 65–66.) Assuming Mr. He worked 45 hours per week and was paid $1,000 per month, his regularly hourly rate would calculate to $5.13 ($1,000 x 12=$12,000 / 52=230.77 / 45=5.13), which is below the federal minimum. However, because Plaintiffs have not shown that they, themselves, were victims of Defendants' illegal pay practices with respect to any alleged FLSA minimum wage violation, *see Cruz*, 2016 WL 4186967, at *4; *Jeong Woo Kim*, 985 F. Supp. 2d at 447, the Court declines to certify a collective on this basis. *See, e.g., Romero v. H.B. Auto. Grp., Inc.*, No. 11-CV-386 (CM), 2012 WL 1514810, at *15 ("Having no FLSA claim of her own as a salesperson, Plaintiff is not similarly situated to non-exempt employees, if any, who potentially have such claims." (citing *Vengurlekar v. Silverline Techs.*, Ltd., 220 F.R.D. 222, 230 (S.D.N.Y. 2003))). Moreover, at the conditional certification phase, "Plaintiffs must demonstrate that they are similarly situated to the potential opt-in plaintiffs." *Placinta*, 2018 WL 5024170, at *7. In this case, given that no Plaintiff or opt-in Plaintiff has provided specific factual allegations that they were paid below the federal minimum wage, Plaintiffs have failed to make "a facially adequate showing that putative members of the collective are similarly situated with respect to the FLSA [minimum wage] violations" they allege. *Zeledon v. Dimi Gyro LLC*, No. 15-CV-7301 (TPG) (DF), 2016 WL 6561404, at *6 (S.D.N.Y. Oct. 13, 2016); *see also Romero*, 2012 WL 1514810, at *10–11 (denying collective certification as to FLSA minimum wage violations where only "a single other individual" was purportedly paid below the federal minimum).

(*see* T. Wang Aff., ECF No. 39-5, ¶¶ 10–11, 13), opt-in Plaintiff Tiande Wang was compensated at $12.40 per hour on a day rate calculation, or $17.18 on a monthly wage calculation. Finally, Plaintiffs Lu Yang and Ya Xu allege that they worked 51 and 48 hours per week, respectively, but do not make representations about their compensation from which the Court can extrapolate an hourly rate. (*See* Yang Aff., ECF No. 39- 6, ¶¶ 10–13; Xu Aff., ECF No. 39-7, ¶¶ 10, 12–13.)[16]

Accordingly, Plaintiffs "do not establish that they were the victims of a common unlawful policy by Defendants to deny employees minimum wage, much less that all of the non-management employees were also subject to such an unlawful policy." *Garcia Ramos v. DNC Food Serv. Corp.*, No. 19-CV-2967 (VSB), 2020 WL 2832776, at *8 (S.D.N.Y. June 1, 2020); *see also Cruz*, 2016 WL 4186967, at *4.

    b)  *FLSA Overtime Claims*

The Court does find, however, that Plaintiffs have attested to facts sufficient at this stage to show that they were subject to an unlawful overtime policy in possible violation of the FLSA. Plaintiff Qian Wang states that she worked 42 to 43 hours per week but was only paid up to 40 hours. (Q. Wang Aff., ECF No. 39-4, ¶¶ 11–12.) Plaintiff Chi avers that he worked 51 hours each week but was paid a fixed salary of $130 per day and not compensated for overtime work. (Chi. Aff., ECF No. 39-8, ¶¶ 8, 13, 20.) Plaintiff Tiande Wang claims he worked 48.36 hours per week and was compensated at a flat rate of $120 per day and $3,600 per month. (T. Wang Aff., ECF No. 39-5, ¶¶ 11, 13, 18.) Plaintiffs Yang and Xu also allege they worked more than 40 hours

---

[16] Mr. Yang does state that, at least initially, he was "supposed to be paid" between $3,000 and $12,000 every six weeks, and then $4,000 to $5,000 every two weeks starting in March 2019. (Yang Aff., ECF No. 39- 6, ¶¶ 11, 13.) However, even if the Court were to calculate such wages based on the 51 hours per week worked, Plaintiff Yang does not allege a federal minimum wage violation.

per week but were not compensated for overtime, but again, offer less concrete facts about their compensation. (*See* Yang Aff., ECF No. 39-6, ¶¶ 10, 20; Xu Aff., ECF No. 39-7, ¶¶ 10, 17.)[17]

In this preliminary context, the Court finds these facts sufficient to allege a policy by which Plaintiffs did not receive overtime compensation, in potential violation of the FLSA. *See Han*, 2021 WL 3774186, at *9 (E.D.N.Y. Aug. 24, 2021) ("[T]o the extent Plaintiff alleges that Defendants paid him a flat monthly salary but did not pay him one-and-a-half times his regular rate for each hour worked in excess of 40 in a week, Plaintiff sufficiently alleges that he suffered a violation of federal overtime wage law."); *Chui v. Am. Yuexianggui of LI LLC*, No. 18-CV-5091 (SJF) (AKT), 2020 WL 3618892, at *7 (E.D.N.Y. July 2, 2020) (finding that an affidavit averring that plaintiff consistently worked more than 40 hours per week for defendants but "was paid a fixed salary . . . that did not properly compensate her for overtime hours" was sufficient to "allege that Plaintiff was subject to a policy or plan which violated the FLSA"); *Jing Fang Luo v. Panarium Kissena Inc.*, No. 15-CV-3642 (WFK) (SLT), 2016 WL 11263668, at *5 (E.D.N.Y. Nov. 23, 2016) ("Here, for purposes of conditional certification only, Plaintiffs established an 'unlawful policy' whereby Defendants violated the FLSA . . . ."), *report and recommendation adopted*, No. 15-CV-3642 (WFK) (SLT), 2017 WL 1216571 (E.D.N.Y. Mar. 30, 2017). "Further, based on this information, the Court 'may infer' that other [similarly situated employees] 'worked similar shifts for comparable pay, thereby suffering the same violations of the FLSA.'" *Ni*, 2020 WL 7078533, at *6 (quoting

---

[17] Defendants vehemently dispute Plaintiffs' attestations. (*See, e.g.*, Defs.' Decl., ECF No. 43, ¶ 15–17, 24, 29, 39, 48; *see also* Defs.' Mem., ECF No. 44, at 5.) However, as explained above, the Court does not consider such arguments on the merits for the purposes of this motion.

*Genxiang Zhang v. Hiro Sushi at Ollie's Inc.*, No. 17-CV-7066 (DF), 2019 WL 699179, at *6

(S.D.N.Y. Feb. 5, 2019)).

> 2.   Similarly Situated

Next, the Court considers whether similarly situated Kirin employees exist with

respect to Plaintiffs' alleged FLSA overtime violations. *See Myers*, 624 F.3d at 555; *Young*,

229 F.R.D. at 54; *see also Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir.

2020) ("One of the principal conditions to proceeding collectively under § 216(b) is that

the named plaintiffs be 'similarly situated' to the opt-in 'party plaintiff[s].'" (quoting 29

U.S.C. § 216(b))). Here, Plaintiffs have provided sufficient information for the purposes

of conditional certification to find that Defendants' commuter van drivers worked

similar shifts for comparable pay, and appear to have been paid a flat rate regardless of

hours worked, in possible contravention of the FLSA's overtime provisions. However,

Plaintiffs have not made this showing for *all* non-managerial employees, such as

billing/payroll workers or dispatchers.[18]

---

[18] As noted above, Plaintiffs only allege that one of the six office workers named, dispatcher Steven Tang, worked more than 40 hours per week, and that he did so "at [the] very beginning" before ultimately leaving Kirin in February 2019. (*See, e.g.*, Q. Wang Aff., ECF No. 39-4, ¶¶ 27, 29.) Even taken together with Plaintiff Qian Wang's attestation that she worked two to three overtime hours per week as a billing/payroll worker from April 2, 2018, until she was fired on December 2, 2020, the Court finds that Plaintiffs have not satisfied the low burden at this juncture for showing Kirin's office workers were similarly situated with respect to any alleged FLSA overtime violations. *See Jenkins v. TJX Companies Inc.*, 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012) ("[E]ven at this preliminary stage, the Court must find some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims of a particular practice." (quotation marks omitted)); *see also Thompson*, 2021 WL 3087568, at *3; *Ni*, 2020 WL 7078533, at *8; *Elamrani v. Henry Limousine, Ltd.*, No. 15-CV-2050 (ERK) (MDG), 2016 WL 5477590, at *4 (E.D.N.Y. Sept. 28, 2016). Furthermore, Plaintiffs' arguments that Defendants' alleged NYLL violations "demonstrate[] that Plaintiffs and the potential opt-in plaintiffs[] were subject to a common unlawful practice that shares a factual nexus," are unavailing. (*See* Pls.' Mem., ECF No. 40, at 15; *see also id.* at 16.) State law claims are not a sufficient basis for conditional certification under the FLSA. *See Hanming Feng v. Soy Sauce LLC*, No. 15-CV-3058 (ENV) (LB), 2016 WL 1070813, at *4 (E.D.N.Y. Mar. 14, 2016); *see also Placinta*, 2018 WL 5024170, at *7 n.5 ("To bring state-law claims on behalf of others against Defendants, Plaintiff[s] must seek class certification pursuant to Rule 23."). Accordingly, Plaintiffs' application for a collective broader than van drivers as to FLSA overtime violations is denied on the current record.

According to Plaintiffs' affidavits, fourteen of the fifteen other drivers — who Plaintiffs name and describe with a basic level of specificity — worked more than 40 hours a week, which Plaintiff Qian Wang knows because she made their schedules, and the other Plaintiffs help confirm based on their membership in a Kirin group chat on WeChat that "would remind individual driver[s] if his or her work schedules were subject to change." (*See* Q. Wang Aff., ECF No. 39-4, ¶¶ 45–46, 51–52, 57–58, 63–64, 69– 70, 75–76, 80–81, 86–87, 92–93, 98–99, 104–05, 110–11, 116–17, 122–23; *see also, e.g.*, T. Wang Aff., ECF No. 39-5, ¶¶ 48–49, 52–53, 56–57, 60–61, 64–65, 68–69, 72–73, 76–77, 80– 81, 84–85, 88–89, 92–93, 96–97, 100–01; Pls.' Mem., ECF No. 40, at 14.) However, as discussed above, Plaintiff Qian Wang is the only Plaintiff who makes representations regarding these fourteen named commuter van drivers' compensation, and does so on the basis of her apparent role in making their payroll. (*See* Q. Wang Aff., ECF No. 39-4, ¶¶ 47–48, 53–54, 59–60, 65–66, 71–72, 76–77, 82–83, 88–89, 94–95, 100–01, 106–07, 112–13, 118–19, 124–25; *see also* Affidavit Summaries, ECF No. 39-9.) She describes these drivers' monthly salaries as ranging from $2,000 to $5,000, regardless of how many hours they worked. (*Id.*)

For example, Fun Ming Zhou and Wei Zhong Zhu allegedly each worked the same schedule of between 48 and 56 hours per week, but Mr. Zhou was paid $2,000 to $3,000 per month while Mr. Zhu was paid $4,000 to $5,000 per month. (*See* Q. Wang Aff., ECF No. 39-4, ¶¶ 45, 47, 51, 53.) Similarly, like several of the other drivers, Jian Yao allegedly worked 47.5 hours per week but was paid $4,000 to $5,000 per month instead of the $2,000 to $3,000 the other drivers received for those hours, and Zhi Shang Peng worked 57.5 hours per week but earned $4,000 per month. (*Id.* ¶¶ 110, 112–13, 115, 118– 19.) Although they dispute their liability, Defendants actually corroborate the claim that the drivers were not paid according to the number of hours worked, arguing that "[t]he

money paid to the drivers is calculated on a tiered basis depending on factors such as the distance (mileage) a particular driver drives a particular passenger . . . ." (Defs.' Decl., ECF No. 43, ¶ 15; *see also* Defs.' Mem., ECF No. 44, at 4 ("The drivers were paid a commission based upon facts such as miles driven per passenger and who the passenger was and which entity paid for the passenger's fair. Different criteria existed per driver per ride.").)

Based on the above, the Court finds that on the whole, Plaintiffs' allegations are sufficient at this stage to establish a factual nexus between the respective situations of the driver Plaintiffs and the other van drivers, "such that they are similarly situated 'victims of a common policy or plan that violated the law,'" as alleged in this motion. *Chui*, 2020 WL 3618892, at *7 (quoting *Neris v. R.J.D. Constr., Inc.*, No. 18-CV-1701 (ADS) (AKT), 2019 WL 1458239, at *5 (E.D.N.Y. Mar. 29, 2019)). Contrary to Defendants' contention (*see* Defs.' Mem., ECF No. 44, at 4), this is not a situation in which Plaintiffs have failed to submit "*any* evidence by affidavit or otherwise to demonstrate that he and other potential plaintiffs were victims of a common policy or plan that violated the law." *Prizmic v. Armour, Inc.*, No. 05-CV-2503 (DLI) (MDG), 2006 WL 1662614, at *3 (E.D.N.Y. June 12, 2006) (emphasis in original).

Further, to the extent that Plaintiffs and the other van drivers worked a different range of weekly hours and received a varied rate of pay, the Court notes that this "does not necessarily preclude a finding that [they] and [the] other employees were similarly situated with respect to their compensation of overtime wages." *Ni*, 2020 WL 7078533, at *8 (explaining that "[u]nder the FLSA and NYLL a fixed salary [will not] be deemed to include an overtime component in the absence of an express agreement," and that "[t]here is a rebuttable presumption that a daily or weekly salary does not include an overtime premium for the hours worked in excess of forty hours per week" (quotation

21

marks omitted)). Moreover, as discussed above, at this preliminary certification stage, "the court does not resolve factual disputes, decide ultimate issues on the merits or make credibility determinations." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007); *see also Han*, 2021 WL 3774186, at *7 ("At the preliminary stage of an FLSA collective certification, 'whether [the plaintiff] will eventually succeed on the merits of his FLSA claim is immaterial.'" (quoting *Jeong Woo Kim*, 985 F. Supp. 2d at 447).

For these reasons, Plaintiffs have made the requisite "modest factual showing" necessary to be afforded the opportunity to send a notice to other commuter van drivers employed by Defendants so that they may choose to opt into the lawsuit. *See Wilson v. Jamaica Serv. Program for Older Adults, Inc.*, No. 21-CV-1263 (BMC), 2021 WL 4750098, at *3 (E.D.N.Y. Oct. 12, 2021) ("Plaintiff's allegations, while not particularly robust, are sufficient. They are not the sort of 'vague, conclusory, and unsupported assertions' that would fail to clear the very low bar courts have set for them in determining whether to conditionally certify a collective action." (quoting *She Jian Guo v. Tommy's Sushi Inc.*, No. 14-CV-3946, 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014))).

### C. Notice of Pendency

"Once a court determines that a named plaintiff has demonstrated that he or she is similarly situated to other employees of the defendant with respect to the defendant's alleged unlawful policy . . . the court may proceed to authorize issuance of a notice informing potential additional plaintiffs of their opportunity to opt into the lawsuit." *Genxiang Zhang*, 2019 WL 699179, at *6; *see also Lynch*, 491 F. Supp. 2d at 367. The FLSA "vests the district court with broad discretion with respect to the notice of pending litigation to be provided to potential opt-in plaintiffs," and "[n]either the [FLSA] statute, nor the courts, specifically outline what form court-authorized notice should take, nor

what provisions the notice should contain." *Yi Mei Ke*, 2021 WL 148751, at *12 (quotation marks omitted). Here, Plaintiffs have proposed content for this notice (*see* Proposed Notice, ECF No. 39-2; Proposed Order, ECF No. 39-3), to which Defendants raise several objections (*see* Defs.' Mem., ECF No. 44, at 7–11). For the reasons stated herein, the Court adopts Plaintiffs' proposed notice, in part, pursuant to the modifications below.

      1.  <u>Scope of Collective & General Contents of Notice</u>

Because the Court has limited the scope of the collective to Defendants' commuter van drivers, the scope of notice shall be similarly narrowed as follows:

> Current and former non-exempt commuter van drivers employed at any time from November 6, 2017, to the present by: (1) KIRIN TRANSPORTATION INC. d/b/a Kirin Transportation, located at 142-04 Bayside Ave., Suite 7L, Flushing, NY 11354.

(*See* Proposed Notice, ECF No. 39-2, at 1.) The text of the notice should also be narrowed to reflect this change. For example, under the first sub-heading explaining why individuals are receiving the notice, the document should be edited to read: "You are getting this notice because Defendants' records show that you work or worked for Defendants as a commuter van driver at some time from November 6, 2017 through the present." (*See id.* at 2.)

In addition, as noted, Defendants raise several objections to the contents of Plaintiffs' proposed notice and how and to whom it should be distributed. The Court will address each in turn. First, Defendants argue that the notice should not include references to the NYLL and should also not be sent to any former employees who previously signed releases and/or settlement agreements with Defendants. (Defs.' Mem., ECF No. 44, at 7, 9.) The Court agrees with Defendants that the notice should not state or imply that the conditionally certified collective covers alleged NYLL violations,

or federal minimum wage violations for that matter. (*See supra* note 14.) Accordingly, the language in the notice advising potential opt-in plaintiffs of their "right to participate in this lawsuit as a claimant and plaintiff under the Fair Labor Standards Act if [they] worked for Defendants at any time from November 06, 2017 to the present and were not paid minimum wage for all hours worked," must be removed, as must any similar suggestions that the collective covers minimum wage or NYLL violations. (Proposed Notice, ECF No. 39-2, at 2.) However, to the extent that Plaintiffs reference their NYLL and alleged minimum wage violations in describing "the nature of the lawsuit filed and the relief being sought," they may do so. *See Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 566 (S.D.N.Y. 2012).

In response to Defendants' second objection, that notice should not be sent to former employees who previously settled claims with Kirin (*see* Defs.' Mem., ECF No. 44, at 9 (citing *Morangelli v. Chemed Corp.*, No. 10-CV-876 (BMC), 2010 WL 11622886, at *3 (E.D.N.Y. June 17, 2010))), Plaintiffs argue that "the existence of settlements between putative collective members and Defendants should have no bearing on the Court's decision as to whether to certify, and the scope of, the collective." (Pls.' Reply, ECF No. 45, at 5 (citing *Young Min Lee v. New Kang Suh Inc.*, No. 17-CV-9502 (NSR), 2020 WL 5504309, at *3 (S.D.N.Y. Sept. 11, 2020); *Tortomas v. Pall Corp.*, No. 18-CV-5098 (JMA) (SIL), 2020 WL 2933669, at *2–5 (E.D.N.Y. May 31, 2020)).) Here, the Court agrees with Plaintiffs. Given the broad remedial purposes of the FLSA, and in light of Defendants' future opportunity to decertify this collective, limiting distribution of the notice in this way is not warranted. *Myers*, 624 F.3d at 555; *Jibowu*, 492 F. Supp. 3d at 118; *cf. Nyarko v. M&A Projects Restoration Inc.*, No. 18-CV-5194 (FB) (ST), 2021 WL 4755602, at *14 (E.D.N.Y. Sept. 13, 2021), *report and recommendation adopted*, No. 18-CV-5194 (FB) (ST), 2021 WL 4472618 (E.D.N.Y. Sept. 30, 2021). Moreover, unlike in *Morangelli*, where the

24

relevant arbitration agreements were submitted to the court as part of its consideration for a proposed nationwide collective, 2010 WL 11622886, at *3, the purported settlement agreements here are described only generally by Defendants "[u]pon information and belief," to show Defendants resolved "respective claims for unpaid commissions" for "several current and former . . . drivers." (Defs.' Mem., ECF No. 44, at 7.)

Therefore, the Court concludes that a better course would be to analyze the potentially preclusive effects of any prior settlement agreements if and when such evidence is properly before the Court. *See, e.g.*, *Young Min Lee*, 2020 WL 5504309, at *3.

## 2. Third-Party Administrator

Defendants also urge the Court to "authorize a third-party administrator to collect the contact information of the putative collective to receive notice and administer the notice process," in part, because Plaintiffs' counsel "has in the past not limited its use of such information to the authorized purpose: mailing of the court-ordered notice." (Defs.' Mem., ECF No. 44, at 7–8.) Plaintiffs counter that "[t]he use of third-party administrator to issue the notice would be unnecessary[] and inefficient." (Pls.' Reply, ECF No. 45, at 6.) The Court notes that although Plaintiffs' response to Defendants' request does not provide any specific or particularly compelling objections, Defendants also do not indicate whether they are offering to bear the costs of such third-party administration. *See Finnigan v. Metro. Transportation Auth.*, No. 19-CV-516 (PKC) (RER), 2020 WL 1493597, at *4 (E.D.N.Y. Mar. 26, 2020); *Lanqing Lin v. Everyday Beauty Amore Inc.*, No. 18-CV-729 (BMC), 2018 WL 6492741, at *8 (E.D.N.Y. Dec. 10, 2018).

Accordingly, as the requirement that a third party administer notice is not "mandated by most courts in the Second Circuit," *Lanqing Lin*, 2018 WL 6492741, at *8, the Court denies Defendants' request. However, in the event that the parties consent to third-party administration and/or assert who will pay for such administration, they

may renew this request with the Court within fourteen days of this Memorandum and
Order.

        3.  <u>Notice Period</u>

Next, Plaintiff requests to send the notice to those potential members of the
collective employed by Defendants from November 6, 2017 — three years preceding the
commencement of this action — to the present. (*See* Proposed Notice, ECF No. 39-2; Pls.'
Mem., ECF No. 40, at 23, 24.) Defendants argue that "a three year lookback is
appropriate from the date of any Court order, not from the date upon which the
Complaint (or Amended Complaint) was filed." (Defs.' Mem., ECF No. 44, at 6.)

The statute of limitations under the FLSA is generally two years, "except that a
cause of action arising out of a willful violation may be commenced within three years
after the cause of action accrued." 29 U.S.C. § 255(a). At the first stage of conditional
certification, "allegations of willful conduct are sufficient to apply the three-year statute
of limitations for purposes of certifying the class." *Agonath*, 2019 WL 1060627, at *4; *see
also Valerio v. R.N.C. Indus., LLC*, 314 F.R.D. 61, 73–74 (E.D.N.Y. 2016) (collecting cases).
In this case, Plaintiffs repeatedly allege willfulness in the amended complaint. (*See* Am.
Compl., ECF No. 10, ¶¶ 1–2, 37–38, 108–09, 119, 131–32.) Accordingly, a three-year
statute of limitations is appropriate.

With respect to the calculation of this limitations period, Defendants are correct
that "courts often begin counting back from the date of the conditional certification
order since the statute of limitations on FLSA claims continues to run until a plaintiff
consents to join the action." *Neris*, 2019 WL 1458239, at *6 (citing 29 U.S.C. § 256; *Ritz v.
Mike Rory Corp.*, No. 12-CV-367 (JBW) (RML), 2013 WL 1799974, at *3 (E.D.N.Y. 2013));
*see also Hernandez v. Immortal Rise, Inc.*, No. 11-CV-4360 (RRM) (LB), 2012 WL 4369746, at
*7 (E.D.N.Y. Sept. 24, 2012). "However, 'because equitable tolling issues often arise as to

individual opt-in plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.'" *Valerio*, 314 F.R.D. at 74 (quoting *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187 (AJN), 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014)); *see also Yi Mei Ke*, 2021 WL 148751, at *14 ("In this Circuit, courts routinely calculate the notice period from the date on which the lawsuit was filed (not the date of conditional certification)[.]" (quotation marks omitted)).

Here, the Court concludes that "the remedial purposes of the FLSA are best served [] by applying the three-year statute of limitations from the date of the filing of the Complaint in this action." *Valerio*, 314 F.R.D. at 74 (quotation marks omitted). This conclusion does not preclude Defendants from challenging the timeliness of individual opt-in plaintiffs' claims at a later date, if legally supported. *See id*. Accordingly, the Court directs that notice be provided to potential opt-in plaintiffs employed by Defendants since November 6, 2017.

### 4.  Opt-In Period

Plaintiffs contend that the opt-in period in this case should run for 90 days from the date of this Memorandum and Order. (*See* Pls.' Mem., ECF No. 40, at 23–24; Pls.' Reply, ECF No. 45, at 6; Proposed Notice, ECF No. 39-2.) Defendants argue that this period should be limited to 60 days. (Defs.' Mem., ECF No. 44, at 9.) In general, courts only allow a 90-day opt-in period "where the period is agreed upon between the parties or special circumstances require an extended opt-in period." *Chui*, 2020 WL 3618892, at *10 (quoting *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 452 (S.D.N.Y. 2011)). In contrast, "[c]ourts often grant 60-day opt-in periods . . . where the record suggests that the proposed collective is modest in number." *Han*, 2021 WL 3774186, at

27

*13. Here, the record suggests that the proposed collective is relatively small, and Plaintiffs have not presented special circumstances to justify extending the opt-in period.

Accordingly, the proposed notice shall be modified to provide for sixty (60) days during which potential plaintiffs may opt in. *See id.* at *13; *Ni*, 2020 WL 7078533, at *10; *Chui*, 2020 WL 3618892, at *10.

5.  Equitable Tolling

Plaintiffs also request that "the statute of limitation[s] on this suit be tolled for 90 days until the expiration of the Opt-In Period" in order to account for "unnecessary delays." (Pls.' Mem., ECF No. 40, at 25; *see also* Pls.' Reply, ECF No. 45, at 10.) Defendants argue that Plaintiffs have "fail[ed] to identify any unusual circumstances in this litigation to warrant equitable tolling." (Defs.' Mem., ECF No. 44, at 6.)

"Under the FLSA, the statute of limitations applicable to a plaintiff's claim continues to run until he or she has filed a written consent with the court to join the lawsuit." *Ni*, 2020 WL 7078533, at *10 (citing 29 U.S.C. § 256(b)). However, the Court "may toll the limitations period to avoid inequitable circumstances under the doctrine of equitable tolling." *Agonath*, 2019 WL 1060627, at *4 (quotation marks omitted). In determining whether equitable tolling is appropriate, "a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Ni*, 2020 WL 7078533, at *10 (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003)); *see also Yahraes v. Rest. Assocs. Events Corp.*, No. 10-CV-935 (SMG), 2011 WL 844963, at *1–2 (E.D.N.Y. Mar. 8, 2011).

28

Courts in this circuit have permitted equitable tolling while a plaintiff's motion for conditional certification is pending before the court through the expiration of the opt-in period. *See, e.g.*, *Han*, 2021 WL 3774186, at *13; *cf. Ni*, 2020 WL 7078533, at *10; *Chui*, 2020 WL 3618892, at *10; *Yahraes*, 2011 WL 844963, at *2; *McGlone v. Cont. Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012). Here, given the length of time that has passed since the instant motion was filed and the relative diligence of Plaintiffs' counsel in pursuing conditional certification, the limitations period will be tolled from September 3, 2021, the date Plaintiffs filed their conditional certification motion, until sixty (60) days from the Court's final approval of the revised notice. *See Han*, 2021 WL 3774186, at *13; *Ni*, 2020 WL 7078533, at *10; *McGlone*, 867 F. Supp. 2d at 445.

6.   Translation of Notice & Consent to Join Forms

Plaintiffs request that in addition to English, the notice and consent form be translated into Chinese. (*See* Pls.' Mem., ECF No. 40, at 25.) Defendants do not oppose this request, but ask that Plaintiffs "provide Defendants with a proposed translated copy of the Notice, and permit Defendants adequate time to object to same." (Defs.' Mem., ECF No. 44, at 9.) Plaintiffs do not appear to take issue with this request. (*See generally* Pls.' Reply, ECF No. 45.)

Accordingly, given the tendency to permit notice to be "translated into the mother tongue of non-English speaking groups of potential plaintiffs," the Court authorizes Plaintiffs to circulate the notice in English and Chinese. *Valerio*, 314 F.R.D. at 76 (quoting *Colon v. Major Perry St. Corp.*, No. 12-CV-3788 (JPO), 2013 WL 3328223, at *8 (S.D.N.Y. July 2, 2013)). The Court further directs Plaintiffs to provide Defendants with a copy of the Chinese translation of the revised notice pursuant to the timeline outlined below.

29

7. <u>Counsel Information & Fee Arrangement in Notice</u>

Defendants ask the Court to direct Plaintiffs to include defense counsel's contact information on the proposed notice (*see* Defs.' Mem., ECF No. 44, at 9), and also argue that Plaintiffs' counsel should be required to provide "their fee arrangement between any prospective Plaintiffs, as well as the percentage of any recovery that would be paid as attorney fees from any recovery by opt-in plaintiffs." (*Id.* at 11.) Plaintiffs argue in response that including defense counsel's contact information would cause confusion (Pls.' Reply, ECF No. 45, at 6–7; *see also* Pls.' Mem., ECF No. 44, at 23), and that the proposed notice "clearly states in layman's terms[] that the fee arrangement is a contingency fee" and "Plaintiffs' costs and fees will be deducted from any recovery or settlement received." (Pls.' Reply, ECF No. 45, at 9.)

The Court finds that including defense counsel's information on the notice to be appropriate "so as to give putative collective members full counsel information." *Han*, 2021 WL 3774186, at *13 (citing *She Jian Guo*, 2014 WL 5314822, at *4); *see also Wilson*, 2021 WL 4750098, at *4. However, defense counsel's information must "be included in a way that clearly identifies it as such." *Nyarko*, 2021 WL 4755602, at *13, *report and recommendation adopted*, 2021 WL 4472618.

As to the description of Plaintiffs' counsel's fee arrangement, the Court finds the language concerning the fee arrangement to be sufficiently clear for the present purposes. *See Han*, 2021 WL 3774186, at *13. The proposed notice clearly indicates that potential plaintiffs have the right to hire their own attorney. (*See* Proposed Notice, ECF No. 39-2, at 4.) Further, the notice makes plain that if opt-in plaintiffs choose to be represented by Plaintiffs' counsel, "their costs and fees will be paid out of any settlement or money judgment Plaintiffs receive against Defendants," but that if no settlement is reached, Plaintiffs' counsel "will not receive any fee" and they "will not be

required to pay anything out of pocket for services provided." (*Id.*) However, the Court directs Plaintiff's counsel to amend the proposed "Plaintiff Consent Form" to clarify that individuals may opt into the litigation without retaining Plaintiff's counsel's law firm. (*Id.* at 5.)

8.   Distribution of the Notice of Pendency

Plaintiffs wish to disseminate the notice through several methods. (*See* Pls.' Mem., ECF No. 40, at 19–20 (requesting that the notice be distributed via "mail, email, social media chat, and text message, [and] two 'QR codes' (Quick Response codes) on physical notices mailed to potential class members, allowing for Plaintiffs to (1) directly initiate communication with Plaintiffs' counsel, and/or (2) download, sign, and submit the Notice of Pendency form electronically if they so choose"); *see also* Pls.' Reply, ECF No. 45, at 7–8.) Plaintiffs also seek "authorization for the publication of the full opt-in notice on Plaintiffs' counsel's website," to use Defendants' logo, to post the notice at "conspicuous locations [at] Defendants' [locations]," and to include it "in the employees' pay envelopes or other method of delivery of their paycheck information." (Pls.' Mem., ECF No. 40, at 21–22.) Defendants argue that Plaintiffs' distribution plan should be denied because "Plaintiffs have not shown why notice by first class mail is inadequate." (Defs.' Mem., ECF No. 44, at 10.) For the reasons that follow, the Court grants some — but not all — of these requests.

As an initial matter, the Court agrees that dissemination of the notice by mail, email, text message, and social media is appropriate. *See, e.g.*, *Panora v. Deenora Corp.*, No. 19-CV-7267 (BMC), 2020 WL 7246439, at *5 (E.D.N.Y. Dec. 9, 2020) ("The COVID-19 public health crisis favors some form of electronic dissemination."); *see also Nyarko*, 2021 WL 4755602, at *14–15, *report and recommendation adopted*, 2021 WL 4472618. Similarly, although it is not clear that van drivers physically go to Defendants' office, posting the

notice at Defendants' physical business locations is a generally acceptable form of distributing information related to such notices, and is therefore approved. *Ni*, 2020 WL 7078533, at *12 ("Courts in the Second Circuit 'regularly approve plaintiffs' requests to post notices and consent forms in 'non-public areas' where potential collective members are likely to congregate, such as clock-in stations or break rooms.'" (quoting *Castillo v. Perfume Worldwide Inc.*, No. 17-CV-2972 (JS) (AKT), 2018 WL 1581975, at *17 (E.D.N.Y. Mar. 30, 2018))).

The Court does not, however, grant Plaintiffs' requests to add QR codes, to use Defendants' logo, to post the notice on Plaintiffs' counsel's website, or to distribute the notice through Defendants' pay envelopes. Simply put, the Court is not persuaded that such means are necessary, and shares many of the concerns expressed by other courts in the Second Circuit in response to such requests. *See Panora v. Deenora Corp*, 521 F. Supp. 3d 177, 180 (E.D.N.Y. 2021) (strongly disapproving of plaintiffs' counsel's use of defendants' logo and QR codes); *Yi Mei Ke*, 2021 WL 148751, at *15 (denying counsel's request to include notice of pendency in defendants' employees pay envelopes because doing so "may suggest either that the notice originates with the employer or that filling it out may actually be required or expected by the employer"); *Chui*, 2020 WL 3618892, at *10 (denying request to post notice on plaintiff's counsel's website where plaintiff had not provided any justification for doing so). Accordingly, these aspects of Plaintiffs' proposal for disseminating the notice are denied.

Furthermore, Defendants ask that opt-in plaintiffs be directed to return their consent forms with the Clerk of the Court rather than Plaintiffs' counsel. (Defs.' Mem., ECF No. 44, at 11.) Although such requests are not granted in every case, *see, e.g.*, *Wilson*, 2021 WL 4750098, at *5, "[t]he common practice in the Eastern District is to have opt-in plaintiffs send their consent forms to the Clerk of the Court . . . ." *Sharma v.*

*Burberry Ltd.*, 52 F. Supp. 3d 443, 462 (E.D.N.Y. 2014); *see also Jing Fang Luo*, 2016 WL 11263668, at *15 (collecting cases). The Court adopts this measure here, and therefore, the proposed notice must state that potential opt-in plaintiffs should return their consent forms with the Clerk of the Court, rather than Plaintiffs' counsel. *See, e.g., Lin v. JD Produce Maspeth LLC*, No. 20-CV-2746 (WFK) (TAM), 2021 WL 5163218, at *14 (E.D.N.Y. Nov. 5, 2021).[19]

\*   \*   \*   \*   \*

The Court approves the contents of the proposed notice, save for the issues described above. Once Plaintiffs have edited the notice and consent form to reflect the requirements above, Plaintiffs shall serve a draft (in both English and Chinese) on Defendants by **January 21, 2022**, and by **February 4, 2022**, Defendants shall serve any objections or give their consent. By **February 18, 2022**, the parties shall file a joint motion for Court approval, which must include the final version of the notice and consent form. Upon the Court's approval of the final version, Plaintiffs shall distribute the notice within two weeks. Finally, all opt-in consent forms must be filed with the Clerk of the Court, as described above, within sixty (60) days from the date the Court approves the final notice form.

9.   <u>Reminder Notice</u>

Additionally, Plaintiffs request the opportunity to "send a reminder mailing and email to all unresponsive collective action members half-way through the notice period," i.e., thirty (30) days following final approval of the notices, which Defendants do not appear to oppose. (Pls.' Mem., ECF No. 40, at 22.) The Court authorizes Plaintiffs

---

[19] This method will still enable Plaintiffs' counsel to receive notice of opt-in plaintiffs' joining in the lawsuit, as filing with the Clerk of the Court will "cause the Consents to be docketed into the ECF system and thus served on all counsel of record." *See Lujan v. Cabana Mgmt.*, No. 10-CV-755 (ILG), 2011 WL 317984, at *13–14 (E.D.N.Y. Feb. 1, 2011).

to send one reminder notice by mail and email prior to the expiration of the opt-in period in order to alert potential opt-in plaintiffs of the upcoming deadline. *See Ni*, 2020 WL 7078533, at *13; *Han*, 2021 WL 3774186, at *14.

10. <u>Production of Identifying Information</u>

Finally, Plaintiffs ask that the Court order Defendants, within fourteen[20] days of this Memorandum and Order, to "furnish Plaintiffs with a Microsoft Excel data file containing contact information . . . for all non-managerial employees who worked for Defendants from November 6, 2017 to the [] present day," including specific information such as telephone numbers, social media usernames, and dates of employment. (Pls.' Mem., ECF No. 40, at 17.) Defendants argue that "Plaintiffs have not demonstrated a need for" the "production of telephone numbers, e-mail addresses, social media information of putative collective members." (Defs.' Mem., ECF No. 44, at 10–11.)

"In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members." *Taveras v. PSD Freeport Inc.*, No. 19-CV-6243 (MKB) (RER), 2021 WL 1405994, at *7 (E.D.N.Y. Apr. 14, 2021) (quoting *Valerio*, 314 F.R.D. at 74–75). Therefore, Defendants are ordered to produce the requested information — narrowed in scope consistent with this opinion to "current and former non-exempt and non-managerial commuter van drivers employed at any time from November 6, 2017" — within fourteen days of entry of this Memorandum and Order. *See Nyarko*, 2021 WL

---

[20] The Court notes that Plaintiffs' proposed order requests that the identifying information be sent within fifteen days, rather than fourteen, however this appears to have been in error. (*See* Proposed Order, ECF No. 39-3, at 1–2.)

4755602, at *12, *report and recommendation adopted*, 2021 WL 4472618; *Panora*, 2020 WL 7246439, at *4.

## III.    Remaining Discovery Schedule

On December 1, 2021, the parties filed a joint motion to extend the discovery schedule set in this case during an initial conference before the Honorable Vera M. Scanlon on March 9, 2021. (*See* Joint Discovery Mot., ECF No. 46; Mar. 9, 2021 ECF Minute Entry and Order.) In light of the pending motion for conditional certification, the Court ordered the discovery deadlines to be reset upon the adjudication of the instant motion. (*See* Dec. 2, 2021 ECF Order.) The parties indicate that discovery is not yet completed because depositions will be required. (Joint Discovery Mot., ECF No. 46, at 1.) In light of the Court's partial grant of Plaintiffs' motion for conditional certification, the discovery deadlines are extended as follows. The last date to take the first step in dipositive motion practice in accordance with the assigned District Judge's Individual Rules and Practices is **May 27, 2022**. The deadline to file a joint proposed pretrial order is **June 10, 2022**. Furthermore, the parties are directed to meet and confer to set a deposition schedule within thirty (30) days of the Court's final approval of the notice.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for conditional certification as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b) (Pls.' Mot., ECF No. 38) is GRANTED in part and DENIED in part, subject to the limitations discussed in this Memorandum and Order.

The Court further orders that:

(1) within fourteen (14) days of this Order, by **January 21, 2022**, the parties are to meet and confer in good faith, and by **February 18, 2022**, the parties shall submit a revised proposed notice and consent form that complies with the directives set forth herein;

(2) within fourteen (14) days of this Order, by **January 21, 2022**, Defendants are to produce to Plaintiffs a spreadsheet including the full names, last known mailing addresses (including apartment number if applicable), telephone numbers, email addresses, social media, and dates of employment of the members of the putative collective, i.e., commuter van drivers employed by Defendant Kirin Transportation, Inc. at any time from November 6, 2017 to the present;

(3) within thirty (30) days of final approval by the Court, Plaintiffs or their designated representative shall cause a copy of the notice form to be disseminated to the putative collective by first class mail and email and to be posted at Kirin Transportation, located at 142-04 Bayside Ave., Suite 7L, Flushing, NY 11354;

(4) no sooner than thirty (30) days following final approval by the Court, Plaintiffs may send one reminder notice by mail and email to notify potential opt-in plaintiffs that the sixty (60) day opt-in period is coming to a close;

(5) the statute of limitations period for opt-in plaintiffs shall be tolled from September 3, 2021, the date Plaintiffs filed this conditional certification motion, until the

close of the opt-in period, sixty (60) days from the Court's final approval of the revised

notice; and

(6) within thirty (30) days of the Court's final approval of the notice, the parties

are to meet and confer in good faith, and set out a deposition schedule for the discovery

period granted herein.

**SO ORDERED.**

Dated:   Brooklyn, New York
              January 7, 2022

_Taryn A. Merkl_

TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE