UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X
QIAN WANG, a/k/a SARAH WANG,
ZHANWEN CHI, on their own behalf
and on behalf of others similarly situated,
TIANDE WANG, YA XU, and LU YANG,

                    Plaintiffs,

        -against-

KIRIN TRANSPORTATION INC., d/b/a
KIRIN TRANSPORTATION, QIANG
CHEN, a/k/a FRANK CHEN,
MARRIANA YUHUA SONG, a/k/a
NANCY SONG, and QIUXIANG SHI,
a/k/a QIU XIANG SHI,

                    Defendants.
----------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
20-CV-5410 (OEM) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

On November 6, 2020, Plaintiffs Qian Wang, also known as Sarah Wang, and

Zhanwen Chi ("Plaintiffs") initiated this action on behalf of themselves and others

similarly situated against Defendants Kirin Transportation Inc., d/b/a Kirin

Transportation ("Kirin"), Qiang Chen, also known as Frank Chen, Marriana Yuhua

Song, also known as Nancy Song, and Qiuxiang Shi, also known as Qiu Xiang Shi

(collectively "Defendants"). (Compl., ECF No. 1.) Plaintiffs seek damages for unpaid

wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and

the New York Labor Law, Art. 6 Section 190 *et seq*. and Art. 19 Section 650 *et seq*.

("NYLL"). (*Id.* ¶¶ 1, 4.)

Currently pending before this Court is Plaintiffs' motion for class certification.

(*See* Notice of Mot. for Class Cert., ECF No. 108; Decl. of John Troy in Supp., ECF No.

108-1 (hereinafter "Troy Decl."); Mem. of Law in Supp. of Mot. for Class Certification,

ECF No. 108-28 (hereinafter "Mem. in Supp.").) For the reasons set forth herein, the Court respectfully recommends that Plaintiffs' motion for class certification be denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As noted above, Plaintiffs Qian Wang and Zhanwen Chi initiated this action on November 6, 2020. (Compl., ECF No. 1.) Opt-in Plaintiff Tiande Wang consented to join the litigation on December 2, 2020. (T. Wang Consent to Become Party Pl., ECF No. 9.) Plaintiffs filed an amended complaint on December 2, 2020, which is the operative complaint in this action. (Am. Compl., ECF No. 10.)

According to the amended complaint, Kirin is a Queens-based private transportation service for seniors that employs "around 30 drivers, and between 3 to 6 office employees." (*Id*. ¶¶ 9, 36, 65.) Plaintiff Qian Wang alleges that from June 1, 2016, until November 3, 2020, she worked for Defendants as a billing, payroll, and sanitation worker at 142-04 Bayside Ave, Suite 7L, Flushing, NY 11354. (Am. Compl., ECF No. 10, ¶¶ 7, 45.) She claims that she was paid $12 an hour until March 2019, and then "fourteen dollars ($13.50) per hour" "[f]rom on or about January 01, 2019 to November 03, 2020," and that she was not paid for "all hours worked," including the three to four overtime hours she worked on average per week between November 1, 2016, and March 1, 2019. (*Id*. ¶¶ 46–47, 49–51.) Plaintiff Qian Wang also alleges that she did not have a fixed time for lunch or dinner, "was never informed of her hourly pay rate or any tip deductions toward the minimum wage[, and] was not given a statement with her weekly payment," as required by law. (*Id*. ¶¶ 48, 53–54.) Additionally, she claims she was fired on December 2, 2020, shortly after Defendants became aware of the instant lawsuit, and therefore also alleges a claim for retaliation under the FLSA and the NYLL. (*Id*. ¶¶ 56–61, 157–65.)

Plaintiff Zhanwen Chi alleges that he worked as a commuter van driver for Defendants from November 1, 2016, until March 31, 2019. (*Id*. ¶¶ 8, 64.) Plaintiff Chi asserts that he worked an average of 41 hours per week providing transportation for senior passengers between their homes and two senior centers with which Kirin Transportation maintains contracts. (*Id*. ¶¶ 65–66, 69.) He claims he was paid, on average, $130 per day, and that his rate of pay was determined "by the number of persons he drove to the senior center and the distance from his home to the senior center." (*Id*. ¶ 72, 74.) However, Plaintiff Chi alleges that he was not paid overtime or reimbursed for various driving-related expenses, and that Defendants owe him "at least $9960 in unpaid wages." (*Id*. ¶¶ 76–85, 89–91.) Lastly, like Plaintiff Qian Wang, Plaintiff Chi states that he did not have a fixed time for lunch or dinner, was not informed of his hourly pay rate, and was not provided proper wage notice statements. (*Id*. ¶¶ 71, 86, 88.)

Accordingly, Plaintiffs' amended complaint alleges, *inter alia*, that Defendants willfully violated the minimum wage and overtime requirements of the FLSA and the NYLL, as well as the wage and notice and spread of hours requirements under the NYLL. (*Id*. ¶¶ 2, 102–49.)

On February 22, 2021, Plaintiffs Ya Xu and Lu Yang filed their consent to join as Plaintiffs. (*See* Xu Consent to Become Party Pl., ECF No. 32; Yang Consent to Become Party Pl., ECF No. 33.)

On September 3, 2021, Plaintiffs moved for an order conditionally certifying this case as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b), on behalf of all current and former non-exempt and non-managerial employees employed by Defendants from November 6, 2017, to the date the Court so-ordered the Notice of Pendency and Consent to Join Form, or the date Defendants provided the name list,

whichever was later. (Pls.' Mot., ECF No. 38; Pls.' Decl. in Supp. of Mot., ECF No. 39; Pls.' Mem. in Supp. of Mot., ECF No. 40.) On October 12, 2021, the Honorable Kiyo A. Matsumoto referred Plaintiffs' motion to the undersigned magistrate judge, (Oct. 12, 2021 ECF Order Referring Mot.), and on January 7, 2022, the Court granted conditional certification as to the alleged FLSA overtime violations for a limited sub-group made up of commuter van drivers, (Mem. & Order, ECF No. 47).[1]

Specifically, the Court found that "Plaintiffs have made a 'modest factual showing' sufficient to grant conditional certification of a collective as to Plaintiffs Zhanwen Chi, Tiande Wang, Lu Yang, Ya Xu, and Defendants' van drivers, but *not* all current and former non-exempt employees." (Mem. & Order, ECF No. 47, at 13–14 (emphasis added) (quoting *Ni v. Red Tiger Dumpling House Inc.*, No. 19-CV-3269 (GRB) (AKT), 2020 WL 7078533, at *5 (E.D.N.Y. Nov. 30, 2022)).) The Court explained that while

> Plaintiffs have provided sufficient information for the purposes of conditional certification to find that Defendants' commuter van drivers worked similar shifts for comparable pay, and appear to have been paid a flat rate regardless of hours worked, in possible contravention of the FLSA's overtime provisions[,] . . . Plaintiffs have not made this showing for *all* non-managerial employees, such as billing/payroll workers or dispatchers.

(*Id.* at 19 (emphasis in original).) Based on the information submitted in support of the motion for conditional certification, the Court specifically found as follows as to dispatchers and billing/payroll workers:

---

[1] The Court notes that Plaintiffs submitted affidavits from each of five Plaintiffs in support of the motion for conditional certification, as well as charts summarizing the alleged hours and pay rates. (*See generally* Q. Wang Aff., ECF No. 39-4 (dated June 4, 2021); T. Wang Aff., ECF No. 39-5 (dated June 4, 2021); Yang Aff., ECF No. 39-6 (dated June 4, 2021); Xu Aff., ECF No. 39-7 (dated June 4, 2021); Chi Aff., ECF No. 39-8 (dated Dec. 3, 2020); Aff. Summs., ECF No. 39-9.)

> For the four dispatchers, Plaintiffs only assert a potential hourly wage violation as to one, Hai Sheng Lu a/k/a/ Henry Lu, whom Defendants allegedly paid $13.50 per hour in 2019, which Plaintiff Qian Wang knows "because he told [her] while [they] where working together and [she] saw his tax return." (Q. Wang Aff., ECF No. 39-4, ¶¶ 17–21; *see also* Pls.' Mem., ECF No. 40, at 14.) For the other three dispatchers, as well as the two billing and payroll employees, Plaintiffs do not make any representations as to their payment and only assert that one dispatcher, Steven Tang, worked more than 40 hours per week, and that he did so for an undefined period of time "at [the] very beginning." (Q. Wang Aff., ECF No. 39-4, ¶ 29; *see also id*. ¶¶ 22–28, 30–42.)

(*Id.* at 12 (alteration in original) (footnote omitted).) Accordingly, the Court found that the named Plaintiffs — five at the time of the memorandum and order — had not adduced sufficient evidence at the collective certification stage regarding the dispatchers and billing/payroll workers so as to "'make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law.'"[2] (*See id.* at 13 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)); *see also id.* at 19.)

---

[2] The Court further noted as follows:

> Plaintiffs only allege that one of the six office workers named, dispatcher Steven Tang, worked more than 40 hours per week, and that he did so "at [the] very beginning" before ultimately leaving Kirin in February 2019. (*See, e.g.*, Q. Wang Aff., ECF No. 39-4, ¶¶ 27, 29.) Even taken together with Plaintiff Qian Wang's attestation that she worked two to three overtime hours per week as a billing/payroll worker from April 2, 2018, until she was fired on December 2, 2020, the Court finds that Plaintiffs have not satisfied the low burden at this juncture for showing Kirin's office workers were similarly situated with respect to any alleged FLSA overtime violations. Furthermore, Plaintiffs' arguments that Defendants' alleged NYLL violations "demonstrate[] that Plaintiffs and the potential opt-in plaintiffs[] were subject to a common unlawful practice that shares a factual nexus," are unavailing. (*See* Pls.' Mem., ECF No. 40, at 15; *see also id.* at 16.) State law claims are not a sufficient basis for conditional certification under the FLSA. Accordingly, Plaintiffs' application for a collective broader than van drivers as to FLSA overtime violations is denied on the current record.

(Mem. & Order, ECF No. 47, at 19 n.18 (citations omitted) (alterations in original).)

In addition, finding that Plaintiffs had not adduced sufficient evidence to demonstrate that they were victims of a *federal* minimum wage claim, the Court held that "because Plaintiffs have not shown that they were victims of an FLSA minimum wage . . . violation, the Court finds no basis for conditional certification on that claim." (*Id.* at 14 n.14.)[3] Accordingly, the conditional certification of the collective was limited to FLSA overtime claims for commuter van drivers employed by Defendant Kirin Transportation. (*Id.* at 17, 22; *see also id.* at 14, n.14.)

After granting the motion for conditional certification in part, the Court set a deadline of July 21, 2022 for members of the putative collective to opt into the litigation. (Mar. 31, 2022 ECF Min. Entry & Order.) Plaintiff Jian Min Xu filed a consent to become party plaintiff form on June 9, 2022, and a plaintiff consent form on June 13, 2022. (Xu Consent to Become Party Pl., ECF No. 65; Xu Pl. Consent Form; ECF No. 66.) Plaintiff Yuanfu Gao filed a consent to become party plaintiff form on June 18, 2022, and a

---

[3] Following the Court's partial grant of Plaintiffs' collective certification motion, on March 7, 2022, the parties filed a Joint Notice of Pendency and Consent to Sue form for the Court's approval. (Ct. Authorized Notice, ECF No. 57-1, at ECF pp. 1–5; Pl. Consent Form, ECF No. 57-1, at ECF pp. 6–7; *see also* Status Rep., ECF No. 58.) Four days later, on March 11, 2022, the Court directed Plaintiffs to revise the documents. (Mar. 11, 2022 ECF Order.) On March 14, 2022, Plaintiffs filed a letter including a revised Notice of Pendency and Consent to Sue form, which the Court approved. (Ct. Authorized Notice, ECF No. 59-1, at ECF pp. 1–4; Pl. Consent Form, ECF No. 59-1; at ECF pp. 5–6; Mar. 15, 2022 ECF Order; *see also* Letter, ECF No. 59.) On March 23, 2022, the Court held a status conference and discussed, *inter alia*, "the alleged deficiencies in the list of employee information provided to Plaintiffs regarding members of the putative collective in this case." (Mar. 23, 2022 ECF Min. Entry & Order.) The Court directed the parties to "provide all relevant documents and information, in whatever form, that shed light on the list of current and former non-exempt and non-managerial commuter van drivers employed at any time from 11/6/2017 through 1/7/2022 . . . and to generate as complete a list as possible." (*Id.* (emphasis omitted).) On March 31, 2022, the Court held another status conference and discussed "the parties' progress on the list of potential putative collective members." (Mar. 31, 2022 ECF Min. Entry & Order.) The Court directed Defendants "to provide the supplemental list of relevant current and former non-exempt and non-managerial commuter van drivers" by April 8, 2022, and directed the parties to "generate a complete list of all potential opt-in plaintiffs by 5/8/2022, and to distribute the previously approved Notice of Pendency and Consent to Sue Form by 5/22/2024." (*Id.* (citation and emphasis omitted).)

plaintiff consent form on June 23, 2022. (Gao Consent to Become Party Pl., ECF No. 67; Gao Pl. Consent Form; ECF No. 68.) Plaintiff Jin Cheng Miao filed a plaintiff consent form on July 20, 2022.[4] (Miao Pl. Consent Form, ECF No. 69.)

On July 30, 2022, after the opt-in period had ended, the parties filed a joint status report advising the Court that "[P]laintiffs have disseminated their Notices for the Motion for Conditional Collective Certification" and that "five potential plaintiffs have opted in and chosen Troy Law to represent them in this matter." (Status Report, ECF No. 70.) Then, between August 2022 and August 2, 2023, the parties engaged in discovery. (*See* Status Report, ECF No. 71 (indicating that Plaintiff did not serve the discovery requests to Defendants' current counsel until the middle of August 2022); Status Report, ECF No. 93 (advising the Court that "the parties are to certify the close of discovery on July 7 except the opt-in drivers demanded documents" which Plaintiffs planned to provide by August 2).)

On September 7, 2023, Plaintiffs requested a pre-motion conference "to discuss Plaintiffs' anticipated motion for certification of class." (Mot. for Pre-Mot. Conf., ECF No. 99.) On September 27, 2023, the Honorable Orelia E. Merchant set a briefing schedule for Plaintiffs' motion for class certification.[5] (Sept. 27, 2023 ECF Order.) On January 2, 2024, Plaintiffs filed a motion for class certification. (*See* Notice of Mot. for Class Certification, ECF No. 108.) On January 16, 2024, Defendants filed a response, (Opp'n to Mot. for Class Certification, ECF No. 113 (hereinafter "Mem. in Opp'n)), and on January 30, 2024, Plaintiffs filed a reply, (Reply Mem. of Law in Further Supp., ECF

---

[4] Accordingly, "Plaintiffs" herein also refers to the six opt-in Plaintiffs who have joined the two original named Plaintiffs in the action.

[5] The case was reassigned to Judge Merchant on July 6, 2023. (July 6, 2023 ECF Case Reassigned.)

No. 115 (hereinafter "Reply in Supp.")). On April 5, 2024, Judge Merchant referred Plaintiffs' motion for class certification to the undersigned magistrate judge.

## DISCUSSION

Plaintiffs seek class certification under Rule 23 for claims brought under the FLSA and the NYLL for the following class: "All Commuter Van Drivers, Billings, Payroll, and Sanitation Workers and other employees who were employed or are currently employed by Defendants during the six years immediately preceding the initiation of this action, or November 6, 2014, up to the date of the decision on this motion." (Mem. in Supp., ECF No. 108-28, at 1.) Plaintiffs further request (1) designation of Plaintiffs Qian Wang, Zhanwen Chi, Tiande Wang, Ya Xu, and Lu Yang ("Class Plaintiffs") as class representatives; (2) approval, distribution, and posting of class notices; and (3) appointment of Troy Law and its attorneys John Troy, Aaron Schweitzer, and Tiffany Troy as class counsel. (*Id.* at 1, 2, 21.) Plaintiffs argue that their proposed class meets the Rule 23(a) prerequisites and that they have established predominance and superiority under Rule 23(b)(3). (*Id.* at 6–20.) Plaintiffs also contend that they brought their class certification motion "at the earliest practicable time." (*Id.* at 20.)

Defendants object to class certification on two primary grounds. First, Defendants contend that Kirin's drivers are independent contractors who are not covered by the FLSA or the NYLL. (Mem. in Opp'n, ECF No. 113, at 9.) Second, Defendants contend that Plaintiffs have submitted no new information regarding the billing/payroll workers, dispatchers, or sanitation workers, and that Plaintiffs have accordingly failed to adduce sufficient evidence to change the Court's previous determination that Plaintiffs had not demonstrated that these individuals were subject

to a common unlawful practice. (Mem. in Opp'n, ECF No. 113, at 16–17 (quoting Mem. & Order, ECF No. 47, at 19 n.18).)

For the reasons discussed below, the Court respectfully recommends denying Plaintiffs' motion for class certification.

## I.  Legal Standards

"To obtain certification of a class action for money damages under Rule 23(b)(3), a plaintiff must satisfy Rule 23(a)'s . . . prerequisites of numerosity, commonality, typicality, and adequacy of representation. . . ." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013). As the Second Circuit recently observed, Plaintiffs seeking class certification must demonstrate the following:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class; (3) the claims or
> defenses of the representative parties are typical of the claims or defenses
> of the class; and (4) the representative parties will fairly and adequately
> protect the interests of the class.

*Elisa W. v. City of New York*, 82 F.4th 115, 122 (2d Cir. 2023) (quotation marks omitted); *see also* Fed. R. Civ. P. 23(a). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied,'" and "'[a]ctual, not presumed, conformance . . . [is] indispensable.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160–61 (1982)). In this circuit, plaintiffs must also satisfy "the implied requirement of ascertainability." *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 50 (E.D.N.Y. 2019) (citing *In re Petrobras Secs.*, 862 F.3d 250, 266 (2d Cir. 2017)).

Once those prerequisites are met, the plaintiff "must also establish that 'the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy.'" *Amgen Inc.*, 568 U.S. at 460 (quoting Fed. R. Civ. P. 23(b)(3)). Rule 23(b)(3) states, in relevant part, that:

> [M]atters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "The party seeking class certification bears the burden of establishing" compliance with Rule 23 "by a preponderance of the evidence." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).

## II. Analysis

As discussed herein, Plaintiffs have not established, by a preponderance of the evidence, all of the Rule 23(a) prerequisites for class certification. Specifically, Plaintiffs have not clearly demonstrated that the prerequisites of numerosity, commonality, typicality, and adequacy of representation are met here. Moreover, Plaintiffs have not demonstrated that the common questions of law and fact predominate over individual questions pertaining to individual class members. Accordingly, the Court respectfully recommends denying Plaintiffs' motion in its entirety.

As a threshold matter, the Court notes that Plaintiffs have submitted 26 exhibits in support of their motion for class certification, many of which are not mentioned at all in their memorandum in support. (*Compare* Troy Decl., ECF No. 108-1, at 7–9 (detailing 26 exhibits), *with* Mem. in Supp., ECF No. 108-28, at 2, 4, 12 (referencing exhibits two through eight), *and id.* at 1 (misrepresenting that the notice of this action is included as

Exhibit 9, when it is a document entitled "Kirin Former Commuter Van Driver List").) Exhibits two through six comprise the five Class Plaintiff affidavits previously submitted in support of the motion for collective certification. (*See* Q. Wang Aff., ECF Nos. 39-4 & 108-3 (dated June 4, 2021); T. Wang Aff., ECF Nos. 39-5 & 108-4 (dated June 4, 2021); Yang Aff., ECF Nos. 39-6 & 108-5 (dated June 4, 2021); Xu Aff., ECF Nos. 39-7 & 108-6 (dated June 4, 2021); Chi Aff., ECF Nos. 39-8 & 108-7 (dated Dec. 3, 2020).) Exhibit seven is an excerpt of the deposition of Defendant Song and exhibit eight is an excerpt of the deposition of Defendant Chen. (*See* Song Dep., ECF No. 108-8; Chen Dep., ECF No. 108-9.) Exhibit nine is a document entitled Kirin Former Commuter Van Driver List. (Commuter Van Driver List, ECF No. 108-10.) Having closely reviewed Plaintiffs' motion and supporting exhibits, the Court respectfully recommends that the motion be denied for the following reasons.[6]

### A. Rule 23(a) Prerequisites

1. *Numerosity*

As a general rule, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs have averred that "[u]pon information and belief, the potential class exceeds forty (40) employees." (Troy Decl., ECF No. 108-1, ¶ 4.) In support of their argument that the numerosity requirement is satisfied, Plaintiffs have offered evidence of (1) forty-eight commuter van drivers who worked for Defendant Kirin between November 6, 2017, and January

---

[6] Notwithstanding Plaintiffs' failure to discuss or explain the relevance and significance of the other exhibits in their memorandum of law, the Court has reviewed all of Plaintiffs' exhibits in support of the motion. One exhibit of note is a decision by Administrative Law Judge Benjamin W. Green of the National Labor Relations Board, dated June 21, 2023, finding that Defendant Kirin Transportation engaged in unfair labor practices and ordering Defendants to cease and desist and related relief. (NLRB Decision, ECF No. 108-11, at 47.)

7, 2022, (Mem. in Supp., ECF No. 108-28, at 8; Commuter Van Driver List, ECF No. 108-10), and (2) six "workers that worked as dispatchers at defendant's workplace that worked when [Plaintiff Qian Wang] was employed by defendants," (Mem. in Supp., ECF No. 108-28, at 8). Preliminarily, the Court notes that, in support of the motion for class certification, Plaintiffs have not offered any new evidence regarding the hours or rates of pay for dispatchers.[7] Having failed to make the modest showing necessary for these workers to be included in the collective action, the Court finds that Plaintiffs have likewise not met the burden to show, by a preponderance, that the dispatchers should be included in the proposed class.

In addition, as discussed in more detail below, there are questions as to whether Kirin's drivers are employees or independent contractors, which questions "ha[ve] implications . . . such as whether certain plaintiffs even have [FLSA and] NYLL claims as a matter of law." *Shayler v. Midtown Investigations, Ltd.*, No. 12-CV-4684 (KBF), 2013 WL 772818, at *5 (S.D.N.Y. Feb. 27, 2013). In other words, it is unclear, based on the present record, which, if any, of the 48 commuter van drivers are employees and therefore may have claims under the FLSA and the NYLL. Accordingly, because Plaintiffs have not met the burden to show that the six dispatchers should be included in the proposed class, and because there are questions as to how many of the 48 drivers even have FLSA and NYLL claims as a matter of law, the Court cannot determine at this

---

[7] The Court notes that some information regarding the dispatchers' role at Kirin Transportation appears to have been developed before the NLRB, but the NLRB decision certainly does not provide any granular information regarding the dispatchers' hours, rates of pay, or other job circumstances that would be necessary to establish that they are similarly situated to Plaintiffs such that they should be included in the same class and that Plaintiffs would adequately represent them. (*See generally* NLRB Decision, ECF No. 108-11, at 5–8.)

stage that Plaintiffs have met their burden of establishing numerosity by a preponderance of the evidence. *See Johnson*, 780 F.3d at 137.

2. *Commonality & Typicality*

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" not "merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc.*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of Sw.*, 457 U.S. at 157). "In other words, the relevant inquiry is whether a classwide proceeding is capable of 'generat[ing] common *answers* apt to drive the resolution of the litigation.'" *Jacob v. Duane Reade, Inc.*, 602 F. App'x 3, 6 (2d Cir. 2015) (alteration and emphasis in original) (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 350); *see also Elisa W.*, 82 F.4th at 123. In the context of wage and hour cases, "the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 69 (S.D.N.Y. 2018) (quotation marks omitted). Relatedly, "the typicality requirement[] is satisfied by a showing that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. 71, 80 (S.D.N.Y. 2018) (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)). It "is usually met" where "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993).

Plaintiffs argue that there is commonality among Class Plaintiffs and the proposed class members as to each of the following issues: employee status of commuter van drivers, failure to pay minimum wage and overtime under the NYLL, failure to reimburse for tools of the trade, failure to pay spread of hours pay under the

13

NYLL, failure to provide time of hire notice under the NYLL, and failure to provide accurate paystubs under the NYLL. (Mem. in Supp., ECF No. 108-28, at pp. 9, 12, 14–15.) As discussed above, however, Defendants argue that Plaintiffs and the drivers are *not* similarly situated as to the alleged FLSA and NYLL violations because Kirin's drivers are independent contractors, not employees. (Mem. in Opp'n, ECF No. 113, at 9.) In support of their position, Defendants include excerpts of the depositions and testimony before the NLRB of certain driver employees to illustrate facts they contend are relevant to an inquiry into whether a worker is an independent contractor or an employee. (*Id.* at 6–8.)

　　In other words, whether the commonality requirement is met in this case largely turns on whether Class Plaintiffs have submitted sufficient evidence to illustrate that they are similarly situated to the proposed class, and that the drivers are employees as a matter of law. As discussed below, however, the question of whether an individual is an employee or an independent contractor is a highly fact-intensive inquiry, which may turn on the specific circumstances of each worker. Accordingly, the Court first evaluates whether the "allegedly common questions of law and fact[] are accompanied[ ]. . . by the serious threshold inquiry as to whether certain plaintiffs are independent contractors and therefore have no basis for an NYLL claim against defendants." *Shayler*, 2013 WL 772818, at *9.

　　Under the FLSA, an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1); *Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 139 (2d Cir. 2017). "In light of the definition's circularity, courts have endeavored to distinguish between employees and independent contractors based on factors crafted to shed light on the underlying economic reality of the relationship"; in doing so, courts focus on the "totality of the circumstances." *Saleem*, 854 F.3d at 139 (quotation marks omitted); *see*

*generally id.* at 139–40 (discussing the evolution of the economic reality test originating in *United States v. Silk*, 331 U.S. 704 (1947)). Under the NYLL, too, "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Saleem v. Corp. Transp. Grp.*, No. 12-CV-8450 (JMF), 2013 WL 6061340, at *4 (S.D.N.Y. Nov. 15, 2013) (quotation marks omitted). Courts in this circuit "apply a set of non-exhaustive factors set forth by the Supreme Court that, when present, may indicate the existence of an employer-employee relationship." *Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 843 (2d Cir. 2022). Those factors include the following:

> [T]he hiring party's right to control the manner and means by which the product is accomplished . . . [;] the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in the business; the provision of employee benefits; and the tax treatment of the hired party.

*Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52 (1989) (footnotes omitted). "Broadly, these factors examine whether the alleged employer paid the employees' salaries, hired and fired them, and had control over their daily employment activities." *Felder*, 27 F.4th at 843 (quotation marks and alterations omitted).

In this case, "there is 'contradictory evidence' . . . at least, and this is the critical point, as to some of the potential class members." *Saleem*, 2013 WL 6061340, at *5. Indeed, "given the focus of the inquiry . . . and the factual differences within the proposed class, answering the question of whether a particular driver 'is an independent contractor or employee' is likely to be 'fact specific and may be employee specific.'" *Id.* at *6 (quoting *Shayler*, 2013 WL 772818, at *9).

Defendants posit that the drivers in this case were independent contractors, who were to be paid on a per-trip basis, not an hourly basis. Specifically, Defendant Song states as follows in her declaration:

> From the start of joining the Kirin, Plaintiffs-drivers were "driver-owners" who made significant decisions regarding the operation of their small businesses. Kirin is a Black Car Base B02725 with a TLC license. Drivers who work with Kirin Transportation are required to pay an affiliation fee to join the base as independent contractors and the driver should have a vehicle if the driver wants to join the Kirin to work. The drivers have to pay a fee to join Kirin and pay Kirin a weekly fee as well. Although Kirin time by time waived the fee charged from the drivers, it will not change the nature that the driver shall pay a fee to join and pay a fee to get a trip assignment or even not get a trip assignment but still need to pay a fee for Kirin. Each of the drivers received a 1099 tax form for the year that they worked with Kirin. The drivers received payment by trip fare split with Kirin instead of being paid hourly.

(Song Decl., ECF No. 113-2, ¶ 3.) She further contends that the drivers had substantial authority over their schedules, were permitted to work for other driving services, and that Kirin Transportation had "no control over the drivers' vehicles." (*Id.* ¶ 4.)

Plaintiffs disagree with Defendants' factual claims. For example, Plaintiffs assert that the joining or franchise fee, "license, and training fees were not paid by the drivers." (Mem. in Supp., ECF No. 108-28, at 10.) However, drivers Zhishang Teng and Jiahe Qiu testified before the NLRB "that they completed the franchise records and paid the fees referenced therein."[8] (NLRB Decision, ECF No. 108-11, at 6 n.13.) Plaintiffs

---

[8] Although the NLRB judge did "not find it significant that drivers Teng and Qiu claimed they completed franchise records and paid franchise fees," it is important to note that this finding was made in the context of an NLRB unfair labor practices action where Teng and Qiu were not charging parties. (NLRB Decision, ECF No. 108-11, at 29 n.35.) Indeed, in the very next sentence, Judge Green observed that "[t]hose drivers are not alleged discriminatees and their employment status is not at issue." (*Id.*) Judge Green also noted that Teng had "not been an employee of [Kirin Transportation] since 2017." (*Id.*) Based on the present record, it is unclear as to whether Teng and Qiu's practice of paying franchise fees was a practice also adopted by other drivers, and it also raises questions about there may have been changes in Kirin's practices over time, which could lead to dissimilarity between Plaintiffs and the proposed class members. Given the different question presented in this case, i.e., whether these Plaintiffs have

acknowledge, however, that "some of the drivers had the weekly service fee," which is included in the franchise records, "deducted from their paychecks," while others did not. (Mem. in Supp., ECF No. 108-28, at 10; *see also* NLRB Decision, ECF No. 108-11, at 6 (explaining that "Chi, Yang, and Ya Xu denied they ever saw the franchise forms and largely denied they paid any fees"); *id.* at 6 n.13 (explaining that Teng and Qiu paid the fees referenced in the franchise records, but also noting that "Teng understood his status to be a regular employee" (quotation marks omitted)).)

There are also sharp disagreements regarding Kirin's degree of control over the drivers. Plaintiff argues that "Kirin determined the number of rides performed by drivers, the customers to be transported, the pickup times, pick up locations, and destinations." (Mem. in Supp., ECF No. 108-28, at 10.) However, certain drivers were permitted "to split their assignments and determine which driver would take which customer." (*Id.; see also* NLRB Decision, ECF No. 108-11, at 8 (explaining that "dispatchers generally emailed a combined list of assignments to Ya Xu and Yang," and that "Ya Xu and Yang decided for themselves who would transport which customers").)

This evidence alone suggests that the most significant question in this case — whether the drivers were employees or independent contractors — will not yield a common answer but will rather require a fact-specific, individualized inquiry. However, even in the absence of these contradictions, Plaintiffs have failed to establish commonality by a preponderance of the evidence in that they have not demonstrated that "the same unlawful conduct was directed at or affected both the named plaintiff[s]

---

established commonality and typicality under Rule 23, evidence that some drivers were paying franchise fees and some were not tends to undercut Plaintiffs' position that all drivers were similarly situated employees.

and the class sought to be represented." *Robidoux*, 987 F.2d at 936–37. Although Plaintiffs have submitted many exhibits in support of their motion, including records of commuter van driver salaries, trip logs, and emails, Plaintiffs fail to explain or interpret such evidence to support their arguments. (*See* Tiande Wang Schedules, ECF Nos. 108-14, 108-16; Yang/Xu Schedules, ECF No. 108-17; Ya Xu Schedules, ECF No. 108-20; Payroll Log, ECF No. 108-13.) The bulk of the records pertain to the Class Plaintiffs, and do not demonstrate whether or how the remaining proposed class members were treated similarly and whether such treatment was a violation of law. Moreover, from the records alone, it is unclear how the evidence they have submitted supports Plaintiffs' position that their claims have commonality with claims that could be brought on behalf of the proposed class.[9]

For example, the commuter van driver trip logs demonstrate large discrepancies in the number of rides provided by certain drivers as compared to other drivers, as well as within themselves, across time. (*Compare, e.g.*, Yang/Xu Schedules, ECF No. 108-17, at ECF p. 1 (suggesting that on October 3, 2020, Yang and Xu were assigned two rides), *with id.* at ECF p. 4 (suggesting that on October 7, 2020, Yang and Xu were assigned thirty-one rides); *with* T. Wang Schedules, ECF No. 108-14, at ECF p. 9 (suggesting that on February 1, 2020, Tiande Wang was assigned fourteen rides) *with id.* at ECF p. 17

---

[9] The Court notes that Plaintiffs did make the modest factual inquiry necessary to support collective certification as discussed above, largely based on the information provided by Class Plaintiffs in their affidavits. The Court is, however, concerned about the reliability of the affidavits in light of the more searching standard required in the Rule 23 class certification context. As discussed *infra*, the Class Plaintiffs' affidavits strongly suggest that they were prepared by counsel in that they often contain the same highly specific details regarding other employees' circumstances, such as the precise hours worked by other employees years ago. (*See* Aff. Summs., ECF No. 39-9.) The proposition that each of these employees remembers the work period, number of work days, schedule, and rate of pay for up to 21 co-employees strains credulity. *Id.* Accordingly, the Court does not place significant weight on the Class Plaintiffs' affidavits.

(suggesting that on January 14, 2020, Wang was assigned twenty-eight rides).) The payroll document demonstrates similar internal and external inconsistencies through vast variations in salary. (*Compare, e.g.*, Payroll Log, ECF No. 108-13, at ECF p. 23 (reflecting that on February 21, 2020, Tiande Wang's total salary was $11,316.43, and Chan Kam's total salary was $435.97), *with id.* at ECF p. 26 (reflecting that on April 3, 2020, Wang's total salary was $3,537.05, and Kam's total salary was $24.02).) Without any evidence as to what these records prove, the Court is left with information indicating highly variable circumstances for each driver and little understanding of how this evidence bears on the question of employee status. Rather, this evidence suggests that certain of the Class Plaintiffs and other drivers were not similarly situated in terms of their job assignments and rates of pay — which causes the Court to also question (1) whether all the drivers were similarly situated vis-à-vis their status as employees versus independent contractors and (2) whether all of the drivers suffered a common scheme of not being compensated for overtime given the relatively small scope of work that some of the drivers appear to have undertaken.

Therefore, in light of the contradictions in the record and the swath of unexplained evidence, the Court finds that Plaintiffs evidentiary submissions raise more questions than they answer. In addition, the Court concludes that a key common question — whether the drivers were employees — is not likely to "yield a common answer." *Saleem*, 2013 WL 6061340, at *6. "Instead, answering that question as to each driver will require a fact-specific and driver-specific examination of the degree of control that [Defendants] exercised in fact." *Id*. Accordingly, "Plaintiffs have . . . failed to carry their burden to prove that the commonality requirement is met — a failure [that] is fatal to their motion for class certification." *Id.*

"[F]or largely the same reasons," Plaintiffs have also failed to establish that the typicality requirement is met. *Id.* at *7. Whether Plaintiffs are properly classified as employees "cannot be resolved through generalized proof, but rather requires individualized examination into the extent of control that [Defendants] exercised over each driver." *Id.* "As a result, it cannot be said that . . . the named Plaintiffs' claims are typical of those of the class." *Id.*; *see also In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. at 80.

      3.  *Adequacy of Representation*

        a.  <u>Class Representatives</u>

On the present record, it does not appear that "class members . . . have interests that are antagonistic to one another" or that the proposed Class Plaintiffs are not invested in this action. *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) (quotation marks omitted); *see also In re Frontier Ins. Grp., Inc. Secs. Litig.*, 172 F.R.D. 31, 47 (E.D.N.Y. 1997) ("Courts that have denied class certification based on the inadequate qualifications of plaintiffs have done so only in flagrant cases, where the putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case." (quotation marks and citations omitted)). Here, there is no specific information in the record to indicate that the proposed Class Plaintiffs have a conflict with any other potential class members. But the Court is troubled by the notion that such a narrow group of plaintiffs are adequate to represent such a broadly defined class.

As set forth above, Plaintiffs have moved for certification of a class from "November 6, 2014, up to the date of the decision on this motion," a class period nearly ten years long. (Mem. in Supp., ECF No. 108-28, at 1.) However, the evidence submitted

in support of the motion establishes that the proposed Class Plaintiffs worked for Defendants from no earlier than 2015 through no later than December 2, 2021.[10] Moreover, Plaintiffs propose a class of "all commuter van drivers, billings, payroll, and sanitation workers and other employees," yet only Plaintiff Qian Wang claims to have worked as a billing, payroll, and sanitation worker; all other proposed class representative plaintiffs worked as commuter van drivers. (Mem. in Supp., ECF No. 108-28, at 1 (capitalization modified); *see also* Affs., ECF Nos. 108-3–108-7, ¶ 3.) Furthermore, neither the amended complaint nor the affidavits submitted in support of Plaintiffs' motion provide further detail regarding Plaintiff Qian Wang's role — or any of Kirin's employees' roles — as a sanitation worker. (Mem. & Order, ECF No. 47, at 2 n.3.) Based on this evidentiary record, the Court finds that the evidence submitted in support of Plaintiffs' motion does not establish that the proposed Class Plaintiffs would adequately represent the class.

The Court is also troubled by the affidavits submitted in support of class certification, which often parrot each other and include highly specific details regarding other employees' circumstances, such as the precise hours worked by other employees years ago. These affidavits, as a group, create serious questions about whether the

---

[10] As stated *supra*, counsel seeks designation of Class Plaintiffs Qian Wang, Zhanwen Chi, Tiande Wang, Ya Xu, and Lu Yang as class representatives. (Mem. in Supp., 108-28, at 1 (seeking "[d]esignation of Plaintiffs as Class Representatives"); *id.* at 2 (defining Qian Wang, Zhanwen Chi, Tiande Wang, Ya Xu, and Lu Yang as, "collectively, 'Plaintiffs'").) Plaintiff Qian Wang worked as a billing, payroll, and sanitation worker from June 1, 2016, to December 2, 2020. (Q. Wang Aff., ECF No. 108-3, ¶ 3.) Plaintiff Zhanwen Chi worked as a commuter van driver from November 1, 2016, to March 31, 2019. (Chi Aff., ECF No. 108-7, ¶ 3.) Plaintiff Tiande Wang worked as a commuter van driver from "on or about July 2016 to on or about March 2017, and again from in or about April of 2019 to December 02, 2021." (T. Wang Aff., ECF No. 108-4, ¶ 3.) Plaintiff Ya Xu worked as a commuter van driver from 2016 to March 1, 2021. (Xu Aff., ECF No. 108-6, ¶ 3.) Lastly, Plaintiff Lu Yang worked as a commuter van driver from 2015 to March 1, 2021. (Yang Aff., ECF No. 108-5, ¶ 3.)

affiants' proffered information is based on their independent personal knowledge or whether the witnesses' recollections have been cross-contaminated during discovery and the litigation of this case. Although the Court does not find this concern dispositive as to whether the proposed Class Plaintiffs would adequately represent the class, it does raise concerns about whether the class will be adequately represented or undermined by the affiants' testimony should there be a trial.

      b.   <u>Adequacy of Counsel</u>

Federal Rule of Civil Procedure 23(g)(1) requires that "a court that certifies a class must appoint class counsel." In selecting class counsel, Rule 23(g) requires courts to consider

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). In addition, courts may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Selection of suitable class counsel is of grave importance due to "the *res judicata* effects of class action judgments — inadequate representation by class counsel risks significant prejudice to class members, who potentially lose the chance to seek redress on their claims in the future." *Wang v. Shun Lee Palace Rest.*, No. 17-CV-840 (VSB), 2023 WL 2734328, at *4 (S.D.N.Y. Mar. 31, 2023) (quotation marks omitted). Accordingly, the "Court's duty to ensure that class counsel adequately represents the class is a heavy one." *Id*. In the context of affirming the decertification of a class where Troy Law had

been appointed as class counsel, the Second Circuit has observed that under Rule 23(g), "skilled and zealous representation [is] expected of class counsel." *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 263 (2d Cir. 2021).

Plaintiffs have failed to show that Troy Law, including John Troy and the additional counsel included in the motion, is qualified to represent the proposed class. Counsel posits that "Plaintiffs' counsel has significant experience in complex litigation as well as collective actions pursuant to the FLSA and NYLL." (Mem. in Supp., ECF No. 108-28, at 17.) He also contends that "[c]ounsel has diligently investigated, prosecuted, and dedicated substantial resources to the investigation and prosecution of the claims at issue in the lawsuit." (*Id*.) The record, however, tells a different story.

The record demonstrates a lack of attention to detail and knowledge of counsel's own case. For instance, counsel attested to the fact that "[d]uring the [opt-in period], five (5) workers opted into the lawsuit."[11] (Troy Decl., ECF No. 108-1, ¶ 9.) In support of this assertion, counsel cited to ECF Nos. 65 through 69, which docket entries contain the consent forms of *three* opt-in Plaintiffs: Plaintiffs Jian Min Xu (Min Xu Consent to Become Party Pl., ECF No. 65; Plaintiff Consent Form, ECF No. 66), Yuanfu Gao (Gao Consent to Become Party Pl., ECF No. 67; Pl. Consent Form; ECF No. 68), and Jin Cheng Miao (Miao Pl. Consent Form, ECF No. 69). The double counting of the forms docketed on behalf of Plaintiffs Min Xu and Gao suggest, at best, counsel's lack of attention to detail. Even more concerning, however, is the fact that counsel appears to be unaware that only three plaintiffs opted in during the opt-in period; counsel has repeatedly stated that five workers opted into the lawsuit during this period. (*See, e.g.*, Status

---

[11] The opt-in period began May 22, 2022, and ended July 21, 2022. (*See* Mar. 31, 2022 ECF Min. Entry & Order; Status Report, ECF No. 70.)

Report, ECF No. 70; Troy Decl., ECF No. 108-1, ¶ 9.) Moreover, even if counsel meant to refer to the *total* number of opt-in Plaintiffs, he is incorrect; there are *six* total opt-in Plaintiffs, not five, as detailed in the procedural history above. This begs the question: how can counsel fairly and adequately represent the interests of a much larger class if counsel cannot even keep track of the small number of plaintiffs who have opted into the collective class? *See* Fed. R. Civ. P. 23(g).

Other aspects of counsel's briefs also demonstrate a lack of diligence and familiarity with the record. For instance, Plaintiff Qian Wang claims that she was paid $12 an hour from June 1, 2016 to March 1, 2019, and then "fourteen dollars ($13.50)" an hour "[f]rom on or about January 01, 2019 to November 03, 2020." (Am. Compl., ECF No. 10, ¶¶ 49–51.) However, these dates overlap; was Plaintiff Wang paid $12 an hour between January and March 2019, or was she paid $14 or $13.50 an hour during this period? This internal inconsistency is one of many examples of counsel's lack of diligence and attention to critical details. Counsel's briefs demonstrate a lack of diligence and familiarity with the record on a more general level, too. For instance, counsel fails to support many of his arguments by citing to the record with specificity; in many cases, counsel does not cite to the record at all. (*See, e.g.*, Mem. in Supp., ECF No. 108-28, at 12 (arguing that "[a]t all times, defendants' policy consisted of paying plaintiffs and others similarly situated to them less than the New York State minimum wage," but failing to support this assertion with a citation to any evidence); *id.* at 13 (stating that "Plaintiffs bore the cost of vehicle purchase, maintenance, and repairs for the Defendant" and that "Defendants had a policy of not compensating Plaintiffs for vehicle maintenance," but failing to cite any evidence); Troy Decl., ECF No. 108-1, at ¶¶ 11–14.) At other times, counsel has misrepresented the record. (*See* Mem. in Supp., ECF No. 108-28, at 12 (stating that "defendants admit in their deposition that they failed

24

to pay plaintiffs overtime wage for hours that they worked more than forty (40) hours"
and citing, *inter alia*, Exhibit 7 at 210:6–13, in which Defendant Marriana Song
specifically responds with "I don't know" when asked whether, "[o]n those weeks
when Ms. Wang was recorded as working more than 40 hours . . . she [was] paid time-
and-a-half for those hours beyond 40 hours"); Troy Decl., ECF No. 108-1, ¶ 9
(incorrectly stating that five plaintiffs opted into the lawsuit during the opt-in period, as
discussed above).)

These examples are but few of many in which counsel has misrepresented the
record, failed to properly substantiate his arguments, and overall demonstrated a lack
of familiarity with this case. For these reasons alone, "counsel's conduct in the instant
case gives [the Court] no reason to believe that counsel can be trusted with the grave
responsibility of representing a class." *Chen v. Hunan Manor Enter., Inc.*, No. 17-CV-802
(GBD) (GWG), 2021 WL 2282642, at *7 (S.D.N.Y. June 4, 2021) (similarly holding that
neither John Troy nor Troy law would serve as adequate class counsel), *report and
recommendation adopted sub nom., Chen v. A Taste of Mao, Inc.*, 2021 WL 3727093 (S.D.N.Y.
Aug. 20, 2021).

The Court also must note "the many cases in which Troy Law's performance has
found to be lacking, which collectively demonstrate a troubling pattern of 'Troy Law's
"tendency towards prejudicial neglect of its clients' interests,"' causing other judges in
our circuit to decline to certify a class represented by the firm." *Li v. Dolar Shop Rest.
Grp.*, Nos. 16-CV-1953 (RPK) (TAM) & 16-CV-2474 (RPK) (TAM), 2024 WL 794345, at
*15 (E.D.N.Y. Feb. 9, 2024) (quoting *Shun Lee Palace Rest.*, 2023 WL 2734328, at *7), *report
and recommendation adopted*, Feb. 26, 2024 ECF Order Adopting R. & R.; *see also Chen*,
2021 WL 2282642, at *3–7 (collecting cases).

"Competent representation by class counsel is crucial to the prosecution of a class action." *Jin*, 990 F.3d at 262. Just as in *Chen* and *Dolar Shop*, while Troy Law's performance in this case has been "not as abysmal as some of the conduct described in other cases, counsel's conduct in the instant case gives us no reason to believe that counsel can be trusted with the grave responsibility of representing a class." *Chen*, 2021 WL 2282642, at *7.

## B. Rule 23(b) Predominance Requirement

The predominance inquiry "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case" and "asks whether the common, aggregation-enabling[] issues in the case are more prevalent or important than the non-common, aggregation-defeating[] individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation marks omitted). "[A] court examining predominance must assess (1) the elements of the claims and defenses to be litigated; and (2) whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief." *Johnson*, 780 F.3d at 138 (quotation marks omitted). In addition,

> [w]ith respect to class actions for money damages sought under Rule 23(b)(3), the district court must also find that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that the class action "is superior to other available methods for fairly and efficiently adjudicating the controversy."

*McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 222 (2d Cir. 2008) (quoting Fed. R. Civ. P. 23(b)(3)), *abrogated in part on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008).

Plaintiffs correctly state that "Fed. R. Civ. P. 23 does not require all law or fact to be common; it only requires that the common questions predominate over individual

questions." (Mem. in Supp., ECF No. 108-28, at 17–18.) In other words, "Rule 23(b)(3) requires that the court find that the 'questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair efficient adjudication of the controversy.'" (*Id.* at 18 (quoting Fed. R. Civ. P. 23(b)(3).) Plaintiffs argue that "all the class members have in common questions of law and fact, including, *inter alia*, whether Defendants are joint employers; whether Defendants paid Plaintiffs and potential class members minimum wage, overtime, promised wage rates, and spread of hours wages; and whether Defendants furnished wage notices and wage statements. (*Id.* at 18–19.) Even assuming *arguendo* that these questions are common to all members of the class, Plaintiffs have not established that these questions *predominate* over individual questions. Fed. R. Civ. P. 23(b)(3). As discussed above, "the serious threshold inquiry as to whether certain plaintiffs are independent contractors" or employees is likely to be a fact-intensive, individualized inquiry. *Shayler*, 2013 WL 772818, at *9. Moreover, this question is arguably the most substantial question, as its answer may dictate whether certain drivers have any basis for their FLSA or NYLL claims against Defendants at all. *See id.; In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (explaining that the predominance requirement is satisfied if "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof" (quotation marks omitted)). Accordingly, on this basis alone, Plaintiffs have failed to meet their burden in demonstrating that the predominance requirement is met.

Determining appropriate money damages for class members would also present myriad issues of individualized proof. It is generally true that "'the fact that damages

may have to be ascertained on an individual basis is not [alone] sufficient to defeat class certification.'" *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting *Seijas v. Rep. of Arg.*, 606 F.3d 53, 58 (2d Cir. 2010)). But it is still a "'factor that [courts] . . . consider in deciding whether issues susceptible to generalized proof "outweigh" individual issues.'" *Id.* (quoting *McLaughlin*, 522 F.3d at 231). As discussed above, the evidence suggests that the drivers' salaries are highly variable, both compared to other drivers' salaries on the same day and their own salaries across time. (*Compare, e.g.*, Payroll Log, ECF No. 108-13, at ECF p. 23 (reflecting that on February 21, 2020, Tiande Wang's total salary was $11,316.43, and Chan Kam's total salary was $435.97), *with id.* at ECF p. 26 (reflecting that on April 3, 2020, Tiande Wang's total salary was $3,537.05, and Chan Kam's total salary was $24.02).) Given the wide range in salaries and the lack of any payroll or payment records beyond the seemingly highly incomplete payroll log, the Court finds that Plaintiffs have failed to establish that the predominance requirement is satisfied; indeed, attempting to ascertain class members' respective damages would significantly amplify the number of issues in dispute and impede judicial economy and efficiency given the various factual questions unique to each potential class member.

For all of these reasons, individualized issues permeate Plaintiffs' claims and prevent a finding that class members' claims are "sufficiently cohesive to warrant adjudication by representation." *Tyson Foods*, 577 U.S. at 453 (quotation marks omitted). The Court therefore finds that Plaintiffs have failed to establish predominance as to both liability and damages. For this additional reason, the motion for class certification should be denied.

## CONCLUSION

For the reasons discussed above, the Court finds that Plaintiffs have failed to establish that the proposed class satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). The Court also finds that Plaintiffs have failed to establish predominance as required by Federal Rule of Civil Procedure 23(b)(3). *See also Amgen Inc.*, 568 U.S. at 460. Accordingly, the Court respectfully recommends that Plaintiffs' motion for class certification be denied.

\*    \*    \*    \*    \*

Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Orelia E. Merchant, at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate[ judge's] decision" (quotation marks omitted)).

**SO ORDERED.**

Dated: Brooklyn, New York
       August 2, 2024

_Taryn A. Merkl_

_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE